JANE E. VETTO, OSB #914564
Marion County Legal Counsel
jvetto@co.marion.or.us
KENNETH S. MONTOYA, OSB #064467
Sr. Assistant Legal Counsel
kmontoya@co.marion.or.us
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorneys for Marion County

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER; WILDEARTH GUARDIANS; and NATIVE FISH SOCIETY**,<br><br>                   Plaintiffs,<br><br>   v.<br><br>**U.S. ARMY CORPS OF ENGINEERS and NATIONAL MARINE FISHERIES SERVICE et al**,<br><br>                   Defendants. | Case No. 3:18-cv-00437-PK<br><br>**PROPOSED INTERVENOR MARION COUNTY'S FRCP 24 MOTION TO INTERVENE** |

## LR 7-1 CERTIFICATION

     In compliance with LR7-1, the parties have made a good-faith effort by telephone call to

resolve the dispute and both Plaintiffs and Defendants U.S. Army Corps of Engineers ("Corps")

and National Marine Fisheries Service advise that they will not take a position until they have

1 – **PROPOSED INTERVENOR MARION COUNTY'S FRCP 24 MOTION TO INTERVENE**

reviewed this motion. Defendant City of Salem does not oppose this motion.

## MOTION

Pursuant to Fed. R. Civ. P. 24(a), proposed Intervenor-Defendant Marion County, Oregon ("Marion County") respectfully moves the Court to intervene as of right as a defendant in this action. In the alternative, Marion County asks the Court to permit it to intervene under Fed. R. Civ. P. 24(b).

In support of this motion, Marion County relies upon the Memorandum of Law set forth below, Plaintiffs' Complaint and the Declaration of Thomas Hogue ("*Hogue Decl."*). Marion County also accompanies this motion with Proposed Intervenor-Defendant Marion County's Answer. See Fed. R. Civ. P. 24(c).

## MEMORANDUM OF LAW

### I.    INTRODUCTION

In 2008, the National Marine Fisheries Service issued the Willamette Biological Opinion ("BiOp"). Under the BiOp, the Corps is to control water temperature and fish passage in the North Santiam River Watershed. *See BiOp* at 9-82. To meet this objective, in January of 2018, the Corps proposed to construct a water temperature control tower at Detroit Dam. In order to construct this tower, it is anticipated that Detroit Lake will need to be drained for an extended period. Additionally, the installation of the water control device will allow the Corps to maintain low water levels in the lake indefinitely.[1]

While the Corps has not made a final decision as to whether it will construct the tower, in their action, Plaintiffs have asked the Court to compel the Corps to "construct a temperature control facility" at Detroit Dam by the end of 2018, without further consideration of all

---

1 See, e.g. Zach Urness, "Major dam project could empty Detroit Lake for years, in fish recovery plan," Statesman Journal (Jan 13, 2018), available at https://www.statesmanjournal.com/story/news/2018/01/13/detroit-lake-oregon-reservoir-empty-army-corps-engineers-salmon-steelhead-low-water/1015180001/

2 – **PROPOSED INTERVENOR MARION COUNTY'S FRCP 24 MOTION TO INTERVENE**

reasonable alternatives prior to making a final decision. Complaint ¶ 54. Plaintiffs also ask that the Court declare the Corps in violation of the Environmental Species Act for the Corps' failure to construct the temperature control facility. *Id*.

The National Environmental Policy Act ("NEPA") requires the Corps to consider public input, environmental impacts and reasonable alternatives before making a final decision as to how to improve water quality below Detroit Dam. Marion County is actively participating in the Corp's NEPA process for Detroit Dam. *See Hogue Decl. ¶ 4, Ex 1*. On January 23, 2018, Marion County submitted scoping comments, alerting the Corps to the county's vital economic interests in Detroit Dam. *Id*. Marion County must participate in this lawsuit, however, to ensure its interests are protected in any agreement reached by the parties or decision made by the Court.

Proposed Intervenor-Defendant Marion County has a very strong interest in the outcome of this litigation. The use of natural resources for recreational purposes has been a long and fruitful contributor to Marion County's economy. Approximately 70% of the jobs in the Detroit Lake area are in recreation and accommodation. *Hogue Decl.* ¶ 2. Draining the lake would mean no boating, swimming, or fishing for an extended period which would negatively impact the numerous businesses and industries that rely on water from the North Santiam River Watershed for their operation. Prolonged "low lake" conditions in the North Santiam River Watershed could lead to economic losses of approximately $11 million dollars per year to these Marion County businesses and industries. *Id*.

In addition to anticipated economic losses from recreational industries, the Marion County agricultural, food manufacturing, and beverage manufacturing industries will likewise be significantly impacted by the outcome of this litigation. *Hogue Decl.¶* 3. Marion County is the largest producing agricultural county in Oregon. *Id.* The agriculture and food processing industry

3 – **PROPOSED INTERVENOR MARION COUNTY'S FRCP 24 MOTION TO INTERVENE**

is the longest-standing industry in Marion County, with nearly 800 firms employing over 16,000 people with payroll of nearly $550 million dollars. *Id.* As of 2012, Marion County's agricultural land area totaled 286,194 acres. *Id*. The area that would be affected by the draining of Detroit Lake and resulting prolonged low water levels of Detroit Lake and the North Santiam River comprises 19% of the county land area and 41% of the county jobs. *Id*. Thus, as with the recreational industry in Marion County, the many farms and businesses in southern Marion County that rely on the North Santiam River Watershed for crop irrigation would be severely impacted by low water conditions.[2] *Id.*

    As this litigation presents serious implications for the long-term viability of Marion County's agricultural and recreational industries, and the businesses that support them, the Plaintiffs' proposed course of action also poses a direct threat to Marion County's interest in maintaining both a stable local economy and tax base to provide health and safety services to Marion County residents. In order to adjudicate Plaintiffs' claims, this Court will need to review the BiOp to determine the Corps obligations under the agreement. Whether this Court makes a ruling or the current parties enter into a settlement agreement, the result could affect Marion County's significant economic interests that will be directly impacted as a result of this litigation.

    Proposed Intervenor-Defendant Marion County satisfies the requirement to intervene as of right under Fed. R. Civ. P. 24(a). Marion County asks the Court to grant its motion to intervene so that Marion County can protect its significant interests that would be adversely affected by the outcome of this lawsuit.

///

---

[2] In recognition of the importance of these industries to Marion County, the County provides substantial resources to promote their sustained economic growth through its Community Services Department. *Hogue Decl.* ¶ 2.

## II.    ARGUMENT

### A. The Court Should Grant Intervention of Right Pursuant to Fed. R. Civ. P 24(a).

The law is clear that proposed Intervenor-Defendant Marion County is entitled to intervene as of right in this action. Under Fed. R. Civ. P. 24(a) (2), to intervene as of right, a moving party must show the following: (1) the motion is timely; (2) a significantly protectable interest that relates to the property or transaction that is the subject of the action; (3) that disposition of the action may as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest may be inadequately represented by the parties. *Wilderness Soc. v. U.S. Forest Service,* 630 F.3d 1173, 1177 (9th Cir. 2011). A Court is guided primarily by practical and equitable concerns to determine whether intervention is appropriate and the requirements for intervention are interpreted broadly in favor of intervention. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). Marion County satisfies all four requirements and is entitled to intervene as of right under Fed. R. Civ. P. 24(a).

1. Marion County's Motion is Timely.

To determine if a motion to intervene is timely, a Court should consider three factors: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *Orange Cty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).

Here, this case was filed on March 13, 2018. No dispositive motions have been submitted and no briefing on the merits have been submitted. The Court's only Order other than for extensions of time has been to allow the City of Salem to intervene in this matter, and the Corps' answer is not due until September 11, 2018. Marion County's intervention at this early stage will not prejudice the other parties or disrupt or delay the proceedings. *See Citizen's for Balanced Use v. Mont. Wilderness Assn.*, 647 F.3d 893, 897 (9th Cir. 2011) (no prejudice where motion to

intervene was filed "at an early stage of the proceedings"). Moreover, Marion County's concerns directly involve interpretation of the 2008 BiOp, the key document that the Plaintiffs have put at issue. Thus, Marion County's participation in this lawsuit "will not create delay by 'inject[ing] new issues into the litigation.'" *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007).

2. <u>Marion County Has Significant and Protectable Interests That May Be Impaired or Impeded by the Outcome of This Case.</u>

A party seeking intervention "will generally demonstrate a sufficient interest for intervention of right… if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc.*, 630 F.3d at 1180. An intervening party does not need to establish a specific legal or equitable interest in order to satisfy the first element of the intervention as of right standard. *City of Los Angeles*, 288 F.3d at 398. In allowing a party with a practical interest in the outcome of the case to intervene, Courts are able to prevent or simplify future litigation, avoid duplicative litigation, and allow additional interested parties to submit their views to the Court. *See Forest Conservation Council v. U.S. Forest Service,* 66 F.3d 1489, 1493 (9th Cir. 1995).

Here, Marion County has significant protectable and practical interests in the outcome of this case that justify intervention as of right. Plaintiffs in this action ask the Court to compel the Corps to immediately implement a long-term solution to the water temperature situation that calls for the construction of a temperature control structure at Detroit Dam. Complaint ¶60, ¶64. In order to construct this temperature control structure, the water levels at Detroit Lake will need to be drained, then significantly lowered from normal levels. By lowering these water levels, Marion County's agricultural and recreational industries will be greatly impacted. *Hogue Decl.* ¶3.

Marion County has a strong interest in ensuring the economic survival of two of the largest industries that support its local communities and residents, as evidenced by its creation of a County department charged with promoting economic development in the County. *See Hogue Decl.* ¶ 2. Marion County's agricultural industry is its longest-standing and largest industry. *Id.* ¶3. Revenues from this industry are major contributors to Marion County's economy. *Id.* In addition, the Marion County recreational industry in the Detroit Lake area faces losses of approximately $11 million dollars annually as a result of lowered water levels which will prevent Marion County residents from enjoying these recreational opportunities. *Id.* ¶2. Marion County has a significant protectable interest in protecting the economic well-being of its industries as well as ensuring that its residents are able to enjoy recreational opportunities from its natural resources. *See United States v. Oregon*, 745 F.2d 550 (9th Cir. 1984) In *United States v. Oregon*, several Indian Tribes sued the State of Oregon to define Indian treaty rights to fish in the Columbia River. Idaho sought intervention because fishing by the Indian Tribes could affect Idaho fisherman. In allowing Idaho to intervene, the Ninth Circuit stated that, "there is no serious dispute that Idaho has interests which may be affected by the disposition of this litigation."

Finally, the relief sought by the Plaintiffs will also place additional stresses on Marion County by potentially decreasing the amount of tax revenue available to fund services that provide for the health and safety of its residents. *See Hogue Decl.* ¶ 3. *See also Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924 (9th Cir. 1990) (City found to have protectable interest and permitted to intervene to protect possible loss of tax revenue).

Because Marion County has strong interests that may be adversely affected by the outcome of this lawsuit, Marion County has satisfied the first requirement to intervene as of right in this action.

### 3. Marion County's Interests Are Not Adequately Represented.

In the Ninth Circuit, an "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (1995) (emphasis in original). A Court considers three factors to determine adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *City of Los Angeles*, 288 F.3d at 398 (citation omitted).

The "most important factor" to assess the adequacy of representation is "how the interest compares with the interests of existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). If a would-be intervenor and existing party share the same ultimate objective, adequacy of representation is presumed. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997). But, the Ninth Circuit has "stress[ed] that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests. Rule 24(a) is invoked when the disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation, 'unless existing parties adequately represent that interest.'" *Citizens for Balanced Use v. Mont. Wilderness Assn.*, 647 F.3d 893 (9th Cir. 2011).

In the present matter, proposed Intervenor-Defendant Marion County satisfies each of the three requirements. None of the current parties will make all of Marion County's arguments, because none of the current parties share the same ultimate objective as Marion County. Plaintiffs' objective is to require the Corps to immediately control water temperature and fish

passage at the North Santiam River. The Corps and National Marine Fisheries have not submitted their answer so their exact objective in this litigation is unknown but, presumably, their objective is to comply with the BiOp to control water temperature and fish passage at the North Santiam River. Defendant City of Salem's objective is to protect its water supply for its residents to drink. None of these parties will make all of Marion County's arguments, as protecting Marion County from adverse economic impacts and the loss of health and safety services is not an objective of any of these parties.

None of these parties are capable and willing to make Marion County's arguments to protect Marion County's industries. Again, Plaintiffs' primary focus is on water temperature and fish passage, not on protecting either Marion County's industries or the health and safety services provided through tax revenue generated by these businesses. The Corps and the National Marine Fisheries are charged with addressing multiple environmental concerns and interests on behalf of public interest generally as opposed to local economic concerns. The City of Salem advocates to maintain water for its customers and residents and not for recreational or agricultural economic purposes.  Based on the objectives of the current parties, none are capable and willing to make all of Marion County's arguments to prioritize the economic impact to Marion County industries that support Marion County and its residents.

Finally, Marion County would provide necessary elements to the proceeding that are not currently a part of this litigation. These elements include preserving both the economic viability of Marion County industries and its residents who depend upon these industries for their livelihood, and county services to these residents. Because none of the current parties share the same economic interests that affect Marion County and its residents, granting Marion County's motion to intervene will allow for these interests to be considered prior to implementing a

decision that could detrimentally affect these interests.

**B.     In the Alternative, Marion County Seeks Permissive Leave to Intervene.**

Should the Court determine that proposed Intervenor-Defendant Marion County is not entitled to intervene as of right, Marion County respectfully asks the Court for permissive intervention. Fed. R. Civ. P. 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who… has a claim or defense that shares with the main action a common question of law or fact." The Ninth Circuit has, "often stated that permissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Freedom from Religion Found, Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). Marion County satisfies these requirements.

Here, this case presents a federal question and the Ninth Circuit has held that, "independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new [state law] claims." *Geithner*, 644 F.3d at 844. For reasons detailed above, Marion County's motion to intervene is timely. Finally, the main action and Marion County's defenses have common questions of law and fact. This action arises out of the Corps' duties to manage water temperature and fish passage in the North Santiam River under the BiOp. Plaintiffs argue that the BiOp requires the Corps to construct a water temperature control tower at Detroit Dam. In contrast, Marion County maintains that the BiOp does not require this action. Thus, there are legal and factual questions as to what is required under the BiOp and options that are available to the Corps to meet its obligation under that agreement. As Marion County is able to meet the requirements of. Fed. R. Civ. P. 24(b)(1)(B), therefore, it respectfully asks that it be granted permissive intervention.

### III.     CONCLUSION

For the above reasons, Marion County respectfully requests that the Court permit it to intervene under Fed. R. Civ. P. 24.

DATED this 6th day of September, 2018.

>*/s/Kenneth* S. Montoya _____
>Jane E. Vetto, OSB #21649
>Marion County Counsel
>Kenneth S. Montoya, OSB #064467
>Sr. Assistant Legal Counsel
>Of Attorneys for Marion County

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **PROPOSED INTERVENOR COUNTY OF MARION'S FRCP 24 MOTION TO INTERVENE** on the following person(s):

| | | |
|---|---|---|
| Elizabeth Hunter Potter<br>Lauren M. Rule<br>Advocates for the West<br>3115 NE Sandy Blvd.<br>Suite 223<br>Portland, OR 97232<br>Attorneys for Plaintiffs | Kaitlyn Poirier<br>U.S. Dept. of Justice<br>P.O. Box 7611<br>Washington DC, 20044<br>Attorney for Defendants<br>National Marine Fisheries<br>and U.S. Army Corps of<br>Engineers | Lawrence B. Burke<br>Merissa A. Moeller<br>Aaron K. Stuckey<br>Davis Wright Tremaine, LLP<br>1300 SW Fifth Avenue<br>Suite 2400<br>Portland, OR 97201<br>Thomas V. Cupani<br>City of Salem<br>555 Liberty St SE, Room 205<br>Attorneys for Defendant City of Salem |

<u>XX</u>    By electronic means through the Court's Case Management/Electronic Case File system on the date set forth below;

\_\_\_    By faxing a copy thereof to each attorney at each attorney's last-known facsimile number on the date set forth below;

\_\_\_    By mailing a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorney's last-known office address listed above and causing it to be deposited in the U.S. mail at Salem, Oregon on the date set forth below;

\_\_\_    By causing a copy thereof to be hand-delivered to said attorney at each attorney's last-known office address listed above on the date set forth below;

DATED this 6th day of September, 2018.

*/s/Kenneth S. Montoya*
Kenneth S. Montoya, OSB #064467
Sr. Assistant Legal Counsel
Of Attorneys for Marion County