JEAN E. WILLIAMS, Deputy Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
MICHAEL R. EITEL, Senior Trial Attorney
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NORTHWEST ENVIRONMENTAL DEFENSE CENTER, et al.

Plaintiffs,

v.

U.S. ARMY CORPS OF ENGINEERS, et al.

Defendants,

and

CITY OF SALEM and MARION COUNTY,

Defendant-Intervenors.

Case No.: 3:18-cv-00437-HZ

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT THE STAY

## I. INTRODUCTION

At the end of the day on December 21, 2018, the appropriations act that had been funding the Department of Justice ("DOJ") expired and funding to DOJ lapsed. The same is true for several

other Executive agencies, including Federal Defendant National Marine Fisheries Service ("NMFS"). Due to this lapse in appropriations, Federal Defendants filed a motion to extend the deadline to respond to Plaintiffs' motion for preliminary injunction until 12 business days after funding is restored for the affected federal agency employees and DOJ attorneys. ECF 47. Plaintiffs did not oppose that motion. *Id.* at 1. The Court granted Federal Defendants' motion. ECF 48. The Court's Order specified that all deadlines in this case be stayed until DOJ attorneys are permitted to resume their usual civil litigation functions. *Id.*

Plaintiffs now seek to lift the stay that the Court entered, and Plaintiffs had not opposed, less than three weeks ago. ECF 49. Lifting the stay is neither appropriate nor warranted in this case. The lapse in appropriations largely prevents DOJ and affected federal agency staff (including staff at NMFS and the Department of the Interior) from working on this case, even voluntarily. Because Plaintiffs' injunction proceedings are not filed to protect human life or property, there is no cognizable, legal basis to order Federal Defendants to work in the absence of appropriations.

Nor do the equities support lifting the stay. The absence of appropriations materially prejudices Federal Defendants' ability to access government or agency resources, communicate efficiently, and otherwise engage in actions needed to fully and fairly respond to Plaintiffs' motion. Plaintiffs, in turn, admit in their filings that the alleged statutory violations and harms were known years before they filed suit, and they filed suit over eight months before seeking injunctive relief. After waiting *years* to file suit, then further stalling before finally seeking injunctive relief, Plaintiffs cannot substantiate the need for injunctive relief at all, much less demonstrate that the stay of the litigation is prejudicial to them. *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("'A preliminary injunction is sought upon the theory that there is an

urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action.'") (citation omitted).

The law and facts support maintaining the stay in this case. But, if the stay is lifted, the Court should not adopt Plaintiffs' schedule, which appears directed only at ensuring Federal Defendants are further prejudiced in their ability to respond fully and fairly to Plaintiffs' motion. Instead, the Court should provide Federal Defendants with 30 days after an order lifting the stay to respond, given the extreme difficulty of responding to a motion for preliminary injunction during a lapse in appropriations. If Plaintiffs believe immediate action is warranted after that, they can waive their reply brief and submit the motion for hearing on the papers (which would allow for a hearing in a more expeditious fashion than Plaintiffs' own proposed schedule).

## II. DISCUSSION

### A. The Court should maintain the stay of litigation until appropriations are restored to DOJ and the affected federal agencies.

Three reasons support maintaining the stay in this case: (1) the stay is warranted under the Anti-Deficiency Act; (2) lifting the stay will prejudice Federal Defendants; and (3) Plaintiffs are not prejudiced by maintaining the stay, in light of their own actions *in waiting years* to seek relief from this Court.

First, the stay of the litigation is justified under the Anti-Deficiency Act. The Anti-Deficiency Act prohibits the federal government from either accepting voluntary services or employing personal services "exceeding that authorized by law." 31 U.S.C. § 1342. In other words, if appropriations for an agency have lapsed, an agency "may make no contracts and obligate no further funds" unless it is otherwise authorized by law. Authority for the Continuance of Government Functions During a Temporary Lapse in Appropriations, 43 Op. Att'y Gen. 293, at *1 (1981).

As the Attorney General explained in a 1981 opinion to the President of the United States, the "authorized by law" provision means authorized by Congressional appropriations, other relevant statutes, or when undertaken pursuant to the President's constitutional powers. *Id.* at *10. And "because no statute generally permits federal agencies to incur obligations without appropriations for the pay of employees, agencies are not, in general, authorized by law to employ the services of their employees upon a lapse in appropriations." 43 U.S. Op. Att'y Gen. at *1-2. Federal Defendants are not aware of any statute that allows DOJ or the affected federal agencies to incur financial obligations during a government shutdown. *See, e.g.*, *Kornitzky Grp. v. Elwell*, 2019 U.S. App. LEXIS 929, at *7-*8 (D.C. Cir. Jan. 9, 2019) (J. Randolph, dissenting) ("Given the Appropriations Clause of the Constitution, the constitutionality of [the Anti-Deficiency Act] is beyond doubt," and it would be "blatant bootstrapping" for judges to "circumvent the statutory restriction [in the Anti-Deficiency Act] by authorizing federal officers and employees to show up in court").

Thus, under the Anti-Deficiency Act, DOJ attorneys may work *only* when there are "emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. In order for this exception to apply, "there must be some reasonable and articulable connection between the function to be performed and the safety of human life or the protection of property" and "some reasonable likelihood that the safety of human life or the protection of property would be compromised, in some degree, by delay in the performance of the function in question." 43 U.S. Op. Att'y Gen. at *11. This is not such a case. This case involves the Willamette Valley Project's alleged effects on Endangered Species Act listed species; Plaintiffs' motion is not filed to protect the safety of human life or for the protection of property. And Plaintiffs have not claimed that this exception applies. Because federal employees from DOJ and the affected federal agencies are not

"authorized by law" to work during this shutdown and this case does not fall into the exception allowing work when there is an emergency, the Court should not lift the stay.[1]

Second, lifting the stay would be inequitable and highly prejudicial to Federal Defendants. The federal government shutdown has impeded Federal Defendants' ability to mount a full defense to Plaintiffs' motion for preliminary injunction. The DOJ attorneys assigned to represent Federal Defendants have been furloughed—meaning they are prohibited from working on this case except in very limited circumstances. *See* 31 U.S.C. § 1342; *supra* n.1. Likewise, NMFS employees with knowledge of the issues presented in this case, including the agency counsel representing NMFS in this matter, have been furloughed. The attorney from the United States Department of the Interior's Solicitor's Office representing the United States Bureau of Reclamation, the agency that manages the contracts for irrigation storage water for the Willamette Valley Project and is considered an "action agency" for the Project under the Endangered Species Act and its regulations, has also been furloughed. Until the government shutdown, Reclamation's attorney was providing input and guidance on this case to DOJ attorneys. Simply put, whereas Plaintiffs' counsel can work on this case as much as they would like (researching issues and case law, speaking with their clients, preparing for a possible oral argument, etc.), Federal Defendants have not been able to similarly prepare and will not be able to until the shutdown ends.

Furthermore, even if the DOJ attorneys representing Federal Defendants were exempted from the furlough to respond to Plaintiffs' motion for preliminary injunction, significant challenges and burdens exist to fully and fairly responding to Plaintiffs' motion. Responding to this motion

---

[1] The DOJ FY 2019 Contingency Plan for a Lapse of Appropriations recognizes this, instructing DOJ attorneys to seek stays in, as here, all civil litigation unless postponement would compromise to a significant degree the safety of human life or the protection of property. DOJ FY 2019 Contingency Plan at 3, *available at* https://www.justice.gov/jmd/page/file/1015676/download. Should a Court nonetheless deny the stay, DOJ attorneys will comply with court orders. *Id.*

requires the assistance and input of numerous staff from multiple federal agencies, where the ability of the staff to coordinate and work together is substantially constrained by the lapse in appropriations. The lapse in appropriations for DOJ and affected federal agencies creates significant burdens to even communicating with federal agency employees, let alone obtaining permissions, clearances, and resources needed for federal agency staff to engage in work. These administrative burdens present sizeable obstacles to responding to a preliminary injunction motion that contains multiple declarations and thousands of pages of exhibits, *see* ECF 36-44.

Third, to the extent Plaintiffs claim that their interests would be prejudiced by a continued stay, it is because they waited years to seek relief; the stay is not the action that causes prejudice to Plaintiffs. Plaintiffs concede in their motion for preliminary injunction that they believed Federal Defendants had violated the law "[c]ertainly, by the end of 2015." ECF 36 at 26. Federal Defendants' operation of the Willamette Valley Project, in fact, has been open and transparent for years; Plaintiffs' motion does not purport to address some *new* operation occurring at the federal dams, but instead seeks to change operations that have been occurring for years. *See, e.g.*, ECF 49 at 1-2. Nonetheless, Plaintiffs waited almost two years after these alleged violations to send a notice of intent to sue to the United States Army Corps of Engineers. *See* Notice of Intent to Sue the Corps dated November 2, 2017, *available at* https://nativefishsociety.org/news-media/corps-on-notice-for-failing-to-protect-threatened-willamette-fish. Plaintiffs then waited until March 13, 2018, to file a complaint. *See* 16 U.S.C. 1540(g)(2); ECF 1. After that, Plaintiffs waited another eight months to file their motion for preliminary injunction. ECF 36. And less than three weeks ago, Plaintiffs did not oppose staying this case until appropriations are restored.

Plaintiffs' own actions over the past years demonstrates the lack of urgency or exigency necessitating immediate action by this Court.

Against this history of inaction, Plaintiffs now argue that "an order from the Court is needed this spring to achieve the requested relief." ECF 49 at 1. Plaintiffs could have sought a Court order granting relief last spring (in 2018), but they chose not to do so. Plaintiffs articulate no reason why it is critical or urgent that the Court must act now to issue the extraordinary remedy of an injunction in view of Plaintiffs' actions of waiting years to approach this Court and seek relief. Indeed, Plaintiffs notably avoid this issue by merely claiming that the requested injunction would be beneficial and prudent, not that it is critically urgent to forestall some truly irreparable harm to the Upper Willamette River salmonids Plaintiffs claim an interest in protecting. ECF 49 at 1-2.

Plaintiffs avoid addressing their decision to wait for years before seeking relief, and for good reason—Plaintiffs' *actions* (as opposed to their current litigation *arguments*) show that no irreparable harm is occurring as a result of the alleged violations and thus that no injunction should issue at all. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) ("unreasonable delay can defeat irreparable injury and the length of time 'need not be great") (citation omitted). The delay also shows, at a minimum, that staying this case until appropriations are restored would be appropriate. *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enterprises, Inc.*, 745 F.2d at 1213 (9th Cir. 1984).

Plaintiffs rely on orders issued in other cases denying a stay of litigation in light of the lapse in appropriations. ECF 49 at 2-3. But as Plaintiffs recognize, the inquiry on whether to stay a case is specific to the facts of each case. Here, Plaintiffs' own actions have demonstrated a lack of urgency, which shows that a stay *in this case* is appropriate. Additionally, this Court and other courts within the Ninth Circuit have granted many of motions to stay environmental cases and deadlines in environmental cases due to the lapse of appropriations. *See, e.g., Willamette*

*Riverkeeper v. U.S. Army Corps of Eng'rs*, 6:17-cv-00801 (D. Or.), Order Granting Defendants' Motion for Stay, ECF 39 (staying an ESA case against the Corps relating to its operation of hatcheries in the Willamette Valley Project); *Kathrens v. Zinke*, 3:18-cv-1691 (D. Or.), Order Granting Defendants' Motion for Stay, ECF 30; Stay of Cases in which the United States is a Party During the Federal Government Lapse in Appropriations, General Order No. 339 (D. Idaho); *see also Envt'l Def. Ctr. v. Babbitt*, 73 F.3d 867, 871-72 (9th Cir. 1995) (lack of appropriated funds and the Anti-Deficiency Act prevented the Department of Interior from complying with a court order to take action in ESA case). And, unlike the cases that Plaintiffs cite, here Plaintiffs seek to lift a stay that the Court has already entered and Plaintiffs had agreed to less than three weeks ago.

**B. Plaintiffs' proposed schedule is inequitable and should be rejected.**

The Court should deny Plaintiffs' motion and continue the stay until appropriations are restored to DOJ and affected federal agencies. But if the Court disagrees and lifts the stay, Plaintiffs' proposed schedule should be rejected.

Plaintiffs' proposed schedule would require Federal Defendants to file their opposition by February 8. This schedule is unreasonable in view of the significant challenges that exist in responding to a preliminary injunction motion during a lapse in appropriations. As addressed above, DOJ, the Department of Commerce (including Federal Defendant NMFS), and Department of Interior staff are subject to restrictions on working during the lapse of appropriations, even voluntarily. Even assuming the Court lifts the stay, serious limitations and challenges would exist, meaning responding to an injunction motion becomes more burdensome and time consuming for

all staff involved. This, in turn, necessitates at least 30 days to respond to Plaintiffs' motion once a court order lifting the stay exists.[2]

In direct contradiction to their claims of urgency, Plaintiffs ask for a full month to file a reply brief. This, too, is unreasonable. Plaintiffs were required to meet their burden in their opening motion for preliminary injunction, "in order to afford Defendants a full and fair opportunity to respond." *In re Flash Memory Antritrust Litig.*, No. 07-cv-86-SBA, 2010 WL 2332081, at *15 (N.D. Cal. June 9, 2010). Reply briefs thus cannot advance new arguments or proffer new evidence. *Id.*; *see also Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (upholding district court's refusal to consider arguments raised for the first time on reply when considering a motion for preliminary injunction); *Cleavenger v. Univ. of Or.*, No. 13-cv-1908-DOC, 2016 WL 814810, at *4 n.7 (D. Or. Feb. 29, 2016) ("The Court 'decline[s] to consider new issues raised for the first time in a reply brief'") (quoting *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 (9th Cir. 2003)); *Or. Wild v. United States*, 107 F. Supp. 3d 1102, 1116 n.9 (D. Or. 2015); *Harley-Davidson Credit Corp. v. Turudic*, No. 3:11-cv-01317-HZ, 2012 WL 5411771, at *1 (D. Or. Nov. 6, 2012). Reply briefs, in fact, are optional and often not permitted. *See* LR 7-1(e) (practice tip).

Given the nature of a reply brief, it would be highly inequitable to condense Federal Defendants' time to respond to Plaintiffs motion in order to afford them with the luxury of a full month to reply. The inequity is particularly salient here, where Plaintiffs delayed years to initiate their action in this Court and, then, waited over eight additional months to seek relief. If Plaintiffs

[2] In our stay motion, the parties agreed to 12 business days (not calendar days) after appropriations are restored. We are requesting additional time now given the challenges of working during a lapse in appropriations, as working once appropriations are restored is much more efficient.

believe urgency is required, they can forego a reply brief and submit their motion on their opening brief and declarations.

## III. CONCLUSION

At bottom, Plaintiffs now want to saddle Federal Defendants and the Court with the consequences of their own choices and their own inaction—*i.e.*, the decision to wait years to file suit, wait over eight months to file an injunction, and agree to a stay of litigation mere weeks ago. The Court should reject this eleventh-hour invocation of urgency and associated attempt to prejudice the federal government's ability to respond to Plaintiffs' motion by continuing the stay of the litigation until appropriations are restored to DOJ and affected federal agencies.

Dated: January 22, 2019

Respectfully submitted,

JEAN E. WILLIAMS, Deputy Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
MICHAEL R. EITEL, Senior Trial Attorney

/s/ *Kaitlyn Poirier*
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorneys for Federal Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2019, a true and correct copy of the above document was electronically filed with the Clerk of Court using CM/ECF. Copies of the document will be served upon interested counsel via the Notices of Electronic Filing that are generated by CM/ECF.

/s/ *Kaitlyn Poirier*
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorney for Federal Defendants