JEAN E. WILLIAMS, Deputy Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
MICHAEL R. EITEL, Senior Trial Attorney
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov; michael.eitel@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER, et al., | Case No.: 3:18-cv-00437-HZ |
| Plaintiffs, | **FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' SUR-REPLY** |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, et al., | |
| Defendants, | |
| and | |
| CITY OF SALEM and MARION COUNTY, | |
| Defendant-Intervenors. | |

Federal Defendants' Response to Plaintiffs' Sur-Reply

Plaintiffs raised a new claim in their combined summary judgment opposition and reply. They alleged that the U.S. Army Corps of Engineers (Corps) caused "take" of listed salmonids in numbers that exceed the National Marine Fisheries Service's (NMFS) estimates of incidental take in the 2008 Incidental Take Statement (ITS). In their sur-reply, Plaintiffs concede that they did not previously raise this claim. ECF 108 at 2 (admitting that Plaintiffs' notice letter "focused on *other aspects of noncompliance* with the ITS") (emphasis added). Plaintiffs nonetheless argue that they may raise a new claim because the notice of intent, complaint, and summary judgment brief raised a *different* Section 9 claim—that the Corps has not complied with the 2008 ITS's terms and conditions. *Id.* Plaintiffs suggest that all Section 9 claims are fungible, and so they bear no obligation to identify their new legal theory of liability (and the facts supporting that new legal theory) in a notice letter, complaint, or summary judgment brief.

Precedent prohibits this novel approach to litigating claims under the Endangered Species Act's (ESA) citizen-suit provision. For an ESA citizen-suit claim to fall within an Article III case or controversy, a party must raise a legal claim and basic facts supporting it in a notice letter. 16 U.S.C. § 1540(g)(2)(A). A party also must raise the legal claim and facts supporting it in their complaint. Fed. R. Civ. P. 8. Plaintiffs did not comply with either requirement. As a result, the Court should decline to consider Plaintiffs' new Section 9 claim.

**Plaintiffs failed to comply with the ESA's notice provision.**

1.      The ESA requires a plaintiff to provide notice of a violation at least 60 days before filing suit. 16 U.S.C. § 1540(g)(2)(A)(i). The notice requirement is jurisdictional, *Save the Yaak Committee v. Block*, 840 F.2d 714, 721 (9th Cir. 1988), and it requires a plaintiff to "provide sufficient information so that the notified parties could identify and attempt to abate the violation." *Klamath–Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (citation omitted). A party cannot avoid strict application of this notice provision by invoking equitable, "flexible," or

"pragmatic" considerations. *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 26-28 (1989). Rather, the "failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998).

2.      Plaintiffs' notice letter articulated a particular alleged Section 9 violation. They alleged that the Corps is liable under Section 9 by failing to implement the 2008 ITS's terms and conditions. ECF 104-1 at 16-17 ("the Corps is not complying with the ITS requirement to fully implement [Reasonable and Prudent Measure] #4").[1] Plaintiffs' complaint, preliminary injunction motion, and opening summary judgment brief all mirrored the notice's allegation. ECF 1 ¶ 87 (Complaint); ECF 36 at 31 (consistently framing Section 9 claim as the Corps failure to implement the terms and conditions); ECF 75 at 9 (same); ECF 96 at 33-35 (arguing the Corps is liable under Section 9 for failing to implement the terms and conditions, which Plaintiffs assumed incorporated the entire Reasonable and Prudent Alternative).

3.      Faced with clear evidence that they had misconstrued the ITS (ECF 101 at 23-27), Plaintiffs shifted gears to raising a new Section 9 claim on reply—that the Corps affirmatively caused the take of salmonids at levels exceeding the ITS's estimates of take. ECF 103 at 24-25. But Plaintiffs' notice letter did not identify this alleged violation, nor could the Corps possibly discern from the notice letter that Plaintiffs believed that actual "take" levels exceeded the ITS's estimated "take" levels.[2] Plaintiffs simply did not include those legal or factual allegations in their notice letter, as they freely admit in their sur-reply. ECF 108 at 2. Plaintiffs thus failed to "provide sufficient

---

[1] Plaintiffs also alleged that the Corps violated Section 9 by funding hatcheries. *Id.* But Plaintiffs declined to pursue this claim in this case. ECF 101 at 2 n.1.

[2] Plaintiffs' assertion that they raised a new "legal argument" is misleading. ECF 108 at 1. Plaintiffs' summary judgment opposition and reply raises a new legal theory *that depends on specific factual allegations*. ECF 103 at 27-28 (construing the facts as found in the record to support the legal claim).

information of a violation so that the [Corps] could identify and attempt to abate the violation." *Sw.*

*Ctr. for Biological Diversity*, 143 F.3d at 522.

      4.     Plaintiffs respond that a notice letter need not provide specificity on the claims raised

so long as the notice letter identifies the statutory provision (here, Section 9) and alleges how that

violation could be abated. ECF 108 at 2-3. The Ninth Circuit disagrees. In *ONRC Action v. Columbia*

*Plywood*, 286 F.3d 1137 (9th Cir. 2002), ONRC Action's notice letter under the Clean Water Act

(CWA) contested the validity of a permit by raising "a particular theory on which the permit was

invalid—that the permit renewal application was untimely." *Id.* at 1143. As here, ONRC Action

contended that it was not constrained to raising this legal theory, so long as its litigation arguments

also attacked the permit and the new claims could "have been abated by [the defendant] obtaining a

new permit." *Id.* In rejecting this argument, the Ninth Circuit explained that the defendant "was not

required to speculate as to all possible attacks on its [] permit that might be added to a citizen suit

when the 60-day notice so specifically identified only one attack …" *Id.* So too here. Plaintiffs'

notice raised a specific theory on how and why the Corps violated Section 9; they did not raise the

separate, wholly distinct theory first presented in the summary judgment opposition and reply.

      5.     *ONRC Action* is not distinguishable because it addressed the CWA's notice provision.

ECF 108 at 2 (relying on *MacWhorter* to suggest cases interpreting the CWA's notice provision are

not relevant to construing the ESA's notice provision). Congress modeled notice provisions in the

CWA and ESA off the Clean Air Act's notice provision; the notice provisions are thus construed *in*

*pari materia. Hallstrom*, 493 U.S. at 23 n.1; *see also* 16 U.S.C. § 1540(g)(2); 33 U.S.C. § 1365(b)(1)(A).[3] In

*MacWhorter*, the Court noted that the CWA's notice provision is implemented through a regulation,

---

[3] *See also, e.g., Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1062-63
(9th Cir. 2009) (where ESA and CWA use similar statutory provisions to serve similar purposes, the
provisions are interpreted similarly).

so that judicial construction of that regulation does not necessarily inform interpretation of the ESA's notice provision. 797 F.3d at 650. *MacWhorter*, however, nonetheless examined cases interpreting the CWA in construing the ESA's notice provision. *Id.* at 651-53. *MacWhorter* thus stands for the commonsense point that opinions construing the CWA's *regulation* are not necessarily transferable to construing the ESA's notice provision. It does not hold that the ESA's notice provision is interpreted differently from the nearly identical CWA provision.

6.    Indeed, for this reason, *ONRC Action's* holding aligns with the Ninth Circuit's construction of the ESA's notice provision. In *Southwest Center*, the plaintiff argued that "it was not required to list every specific aspect or detail of every alleged violation relied upon in the complaint" in a notice letter. 143 F.3d at 522. The Ninth Circuit refused to condone these efforts to water down the ESA's notice provision. At a minimum, the plaintiff was "obligated to provide sufficient information of a violation so that the [agency] could identify and attempt to abate the violation." *Id.* (citation omitted). In *Conservation Congress v. Finley*, 774 F.3d 611 (9th Cir. 2014), the Ninth Circuit stated that notice letters need not contain "exact details" of the legal claim, but it reaffirmed that notice letters nonetheless must contain "sufficient detail" about the alleged violation. *Id.* at 618; *see also Nat. Res. Def. Council v. Norton*, 05-cv-1207, 2016 WL 6135858, at *14 (E.D. Cal. Oct. 20, 2016) (finding no jurisdiction because the factual allegations supporting the legal theory were not "even alluded to in the 2008 Notice Letter"). And the Ninth Circuit recently reaffirmed that a notice letter must document "the *specific* ways in which the [agency] had allegedly" violated the law. *Friends of the River v. NMFS*, 786 F. App'x 666, 671 (9th Cir. 2019) (emphasis added). Plaintiffs' notice contained no allegations or facts supporting their new claim, which does not adhere to this law.

7.    A pre-suit notice letter "is not just an annoying piece of paper intended as a stumbling block for people who want to sue; it is purposive in nature and the purpose is to accomplish corrections where needed without the necessity of a citizen action." *Ctr. for Biological*

*Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009). Plaintiffs provided notice that they believed the Corps was not implementing terms and conditions. The Corps had no reason to believe Plaintiffs *also* thought the Corps caused "take" at levels that exceeded the ITS's estimates. Plaintiffs' notice was deficient and the Court has "no choice but to dismiss the [new claim] for lack of subject matter jurisdiction." *Sw. Ctr. for Biological Diversity*, 143 F.3d at 522.

**Plaintiffs Section 9 Claim lies outside the existing Case or Controversy.**

1.      A "court's equitable power lies only over the merits of the case or controversy before it." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). The case or controversy is defined by the complaint, which at a minimum must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a party raises new claims supported by new allegations at summary judgment, a court lacks authority to resolve them. Summary judgment, after all, "is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods. v. Southwall Techs.*, 435 F.3d 989, 992 (9th Cir. 2006) (citation omitted); *see also Pac. Radiation Onco*logy, 810 F.3d at 633.

2.      Plaintiffs' complaint raised specific allegations of a Section 9 violation—that the Corps failed to *implement* the ITS's terms and conditions (specifically, RPA 4). *See also* ECF 84 at 6-7 & n.2 (construing Plaintiffs' Section 9 claim as alleging the Corps violated the ITS's terms and conditions). At summary judgment, Plaintiffs shifted the direction of the Section 9 claim with the new legal theory supported by new facts. But, as noted, "Plaintiff may not raise allegations for the first time in a summary judgment response." *Freitag v. Alaska Airlines*, No. 3:17-cv-00865-HZ, 2018 WL 3340873, at *12 (D. Or. July 6, 2018) (citation omitted).

3.      Plaintiffs argue the Court should create an exception here because both the complaint and the new summary judgment claims broadly arise under ESA Section 9. ECF 108 at 3.

In *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008), the *en banc* Court considered a similar argument. The plaintiff there raised five claims challenging the adequacy of an Environmental Impact Statement (EIS) under the National Environmental Policy Act (NEPA). *Id.* at 1079. Even though all five claims raised NEPA claims and challenged the EIS, the plaintiff failed to preserve one of the challenges because the "complaint did not include this NEPA claim or the factual allegations upon which the claim rests." *Id.* The Court did not hold, as Plaintiffs argue here, that a plaintiff may raise new allegations at summary judgment so long as they fall under the same statutory provision or challenge the same underlying action as the claims raised in the complaint. *See also Wasco Prods.*, 435 F.3d at 992 ("The necessary factual averments [in a complaint] are required with respect to each material element of the underlying legal theory") (citation omitted).

4.    Ninth Circuit law also precludes Plaintiffs' arguments that they may raise new claims so long as the government has a chance to respond to them. ECF 108 at 2-3. *Navajo Nation* addressed and rejected this argument as well. "[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court." *Id.* at 1079-80. Plaintiffs' tack of raising a new claim in their summary judgment opposition and reply does not make the new claim part of the case or controversy.

**Conclusion**

For these reasons, the Court should disregard Plaintiffs' new Section 9 claim that they chose to raise for the first time in opposition to the government's summary judgment motion and in their summary judgment reply.


Dated: February 13, 2020        JEAN E. WILLIAMS, Deputy Assistant Attorney General
                                SETH M. BARSKY, Section Chief
                                S. JAY GOVINDAN, Assistant Section Chief

KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Fax: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

*/s/ Michael R. Eitel*
MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, South Terrace 370
Denver, Colorado 80202
Telephone: (303) 844-1479
Fax: (303) 844-1350
Email: michael.eitel@usdoj.gov

Attorneys for Federal Defendants

## CERTIFICATE OF SERVICE

I certify that on February 13, 2020, the foregoing was electronically filed through the Court's

electronic filing system, which will generate automatic service on all Parties enrolled to receive such notice.

*/s/ Michael R. Eitel*
Michael R. Eitel
Senior Trial Attorney
U.S. Department of Justice