IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER, WILDEARTH GUARDIANS, and NATIVE FISH SOCIETY,<br><br>                Plaintiffs,<br><br>   v.<br><br>UNITED STATES ARMY CORPS OF EINGINEERS and NATIONAL MARINE FISHERIES SERVICE,<br><br>                Defendants.<br><br>CITY OF SALEM and MARION COUNTY,<br><br>                Intervenor-Defendants. | No. 3:18-cv-00437-HZ<br><br>ORDER APPOINTING COURT-RETAINED EXPERT |

HERNÁNDEZ, District Judge:

      Due to the complexity and potential safety risks involved in the remedies phase of this litigation, the Court finds that the appointment of a dam safety expert will meaningfully assist the Court with its resolution of Plaintiffs' request for injunctive relief. Pursuant to Federal Rule of Evidence 706, the Court appoints Professor Desiree Tullos, PhD, PE to serve as an expert witness.

1 – ORDER

**I.      Scope of the Expert's Assignment**

The scope of the expert's assignment is limited to analyzing the risks to human life and safety, if any, that could be caused by Plaintiffs' proposed modifications to the Army Corps of Engineers ("the Corps")'s operation of several Willamette Valley Project ("WVP") dams. Issues related to human life and safety include, but are not limited to, loss of flood control capability, damage to the structural integrity of the dams, and riverbank collapse. The expert shall advise the Court of her findings and prepare a written report discussing the following:

(1) A summary of the WVP system and the Corps' baseline dam operations.

(2) The risks to human life and safety that could be caused by Plaintiffs' proposed modifications to the Corps' dam operations in the North Santiam subbasin.

(3) The risks to human life and safety that could be caused by Plaintiffs' proposed modifications to the Corps' dam operations in the South Santiam subbasin.

(4) The risks to human life and safety that could be caused by Plaintiffs' proposed modifications to the Corps' dam operations in the South Fork McKenzie subbasin.

(5) The risks to human life and safety that could be caused by Plaintiffs' proposed modifications to the Corps' dam operations in the Middle Fork Willamette subbasin.

(6) The risks to human life and safety that could be caused by simultaneously implementing Plaintiffs' proposed modifications to the Corps' operations of the WVP as a whole.

**II.     Duties of the Expert**

The court-appointed expert shall:

(1) Serve as a neutral, independent expert for the Court on dam-safety and human-safety issues raised during the remedy proceedings. The expert's duties shall be to provide

      expert analysis and opinions as to the issues in this case as specified in this Order.

(2) Review the relevant materials filed on the docket, as well as any materials that the expert requests from any party.

(3) By March 29, 2021, prepare a written report containing the expert's opinions on the issues and questions presented in this Order. The written report shall be introduced as evidence and may be used by the expert or the parties at depositions and any evidentiary hearing. The parties may file objections to the expert's written report within 14 days of its issuance.

(4) Be available for depositions as requested by any party.

    (a) Each side shall have up to seven hours of deposition time, exclusive of breaks.

    (b) If both sides depose the expert, then the depositions shall be conducted over the course of two consecutive business days.

(5) Be available to attend and testify at the evidentiary proceedings.

(6) Perform such other duties that the Court may hereafter request.

### III. Communication with the Expert

To preserve the standard of neutrality and impartiality:

(1) No ex parte communication between the expert and the parties or their counsel shall be permitted. The parties, including counsel, shall not communicate with the expert on any subject relating to this matter other than in open court or with the Court's prior consent.

    (a) Notwithstanding the above, to the extent the expert requires the Corps to conduct modeling and simulations relevant to the expert's assignment, the Corps may designate a technical liaison to assist the expert with those requests. The

expert and technical liaison shall not discuss issues touching on the merits of this case or the expert's opinion. Communication between the court-retained expert and technical liaison shall be made in writing via email, with the parties copied on the email(s).

(2) If the expert has a request or question for a party, the expert shall let the Court know in writing, and the Court will file a copy of the request or question in the record and direct counsel for the parties to respond, as appropriate. Response(s) shall be filed with the Court and served on the expert.

(3) The expert may communicate with the Court outside of the parties' presence. However, substantive conversations between the expert and the Court will be discussed on the record and made available for the parties' review.

### IV. Compensation of the Expert

(1) The United States shall pay the costs of the court-appointed expert at a rate of $250 per hour.

(2) The appointed expert shall provide a monthly invoice to the Court and counsel for the parties that sets forth the hours worked, a description of work or tasks performed, and the nature and amount of any expenses.

(3) The United States may object to the billing statements by filing objections with the Court within seven business days of receiving an invoice. The Court will resolve the objections and issue an order setting forth the final costs and expenses. If no objections are filed, the Court will issue an order directing the United States to pay the invoiced amount after the seventh business day of the invoice being filed.

4 – ORDER

(4) The United States shall furnish payment to the appointed expert within 60 days of a Court order directing payment of costs.

IT IS SO ORDERED.

DATED: January 18, 2021.

MARCO A. HERNÁNDEZ
United States District Judge

5 – ORDER