Lauren M. Rule (OSB #015174)
Elizabeth H. Potter (OSB #105482)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave. Ste. B
Portland, OR 97202
(503) 914-6388
lrule@advocateswest.org
epotter@advocateswest.org

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER, WILDEARTH GUARDIANS**, and **NATIVE FISH SOCIETY**, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. ARMY CORPS OF ENGINEERS** and **NATIONAL MARINE FISHERIES SERVICE**, <br><br> Defendants, <br><br> and <br><br> **CITY OF SALEM** and **MARION COUNTY**, <br><br> Defendant-Intervenors, | Case No.  3:18-cv-00437-HZ <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Defendants' Notice of Supplemental Authority ignores three key details about *San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation District* Case No. CV-19-08696, ECF No. 175, Ex. 1, that make the case inapposite.

First, the governing statute in that case—Public Law 774—authorized the Twitchell Dam "for irrigation and the conservation of water, flood control, and for other purposes . . . substantially in accordance with" a report by Secretary of the Interior in 1952. *Id*., Ex. 1 at 10–11. That report "considered" the concept of releasing water for steelhead migration but ultimately "rejected" it as an "other purpose" of the dam. *Id*. at 15. Thus, releases of water to benefit steelhead—the relief plaintiffs sought—was "not incidental to the express purposes of the Project but instead [was] a wholly different purpose that detracts from fulfilling the Project's express purposes." *Id*., Ex. 1 at 13–14, 17. This was a key part of the court's holding. *Id*., Ex 1 at 18 (concluding that flows for fish were not an "other purpose" authorized by the statute).

Here, the Flood Control Acts authorized the Willamette Dams for flood control "and other purposes" substantially in accordance with House Document 531 (HD 531). Pub. L. No. 81-516, 64 Stat. 163, 179 (1950). These "other purposes" were described in HD 531 as irrigation, power generation, *fish and wildlife conservation*, water quality, water supply, navigation and recreation. HD 531 at 1, 12, 248, 2034. Indeed, the Corps admits that fish and wildlife are an "authorized purpose" of Cougar and Lookout Point dams along with power production. Wells Decl. ¶ 12 (ECF No. 69). Accordingly, HD 531 did not reject fish conservation as an authorized use of the Project, but rather expressly established it as one of the "other purposes" under the Flood Control Act equally important as power production. Thus, Plaintiffs seek a use that fulfills, rather than detracts from, an authorized purpose here.

Furthermore, there is ample language in HD 531 that makes clear dam operations could

be adjusted over time to accommodate new information or changed circumstances, including to benefit fish.  Pl. Remedy Brief at 34–35 (ECF No. 118) (citing HD 531 at 15-16, 19-21, 253, 324, 334, 342, App. P.); Pl. Reply Br. at 18–20 (ECF No. 143).  Most notably, Appendix J of HD 531 discusses a "reservoir regulation study"—on which the Corps based its position about the "exclusive use" of certain storage water for power production—and explains that the plans developed therein "*should not be considered final if future developments in the basin should alter the concept of any of the conservation requirements, or should research indicate that a change in reservoir regulation policy would be beneficial*."  Pl. Remedy Br at 34–35 (quoting HD 531 App. J at 2064 (emphasis added)).  Accordingly, HD 531 contemplated that changes to reservoir operations, such as the rule curves that establish reservoir elevations, could be made to benefit fish, as Plaintiffs seek here.

      Second, even if there was ambiguity in HD 531—which there is not—the Northwest Power Act subsequently required the Corps to provide equitable treatment to fish and wildlife when exercising its power production responsibilities.  Pl. Remedy Br. at 33; Pl. Reply Brief at 15–16.  And under similar circumstances, the Ninth Circuit has determined that the Corps has discretion to improve passage conditions for salmonids listed under the Endangered Species Act ("ESA") by curtailing power production at the Columbia River dams, which were also authorized under the same Flood Control Acts as the Willamette Project and covered by HD 531. *Id*. at 32–34.  In contrast, the Twitchell Dam is subject to federal reclamation law that involves different mandates.  ECF No. 175, Ex. 1 at 9 (noting that "'Congress has placed limitations on permissible uses of project water and has established priorities among uses since the very inception of federal reclamation law," and "[t]hese directives are binding on the Secretary and on those seeking to obtain project water'") (quoting *Jicarilla Apache Tribe v. United States*, 657

PLAINTIFFS' RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY      2

F.2d 1126, 1139–40 (10th Cir. 1981)).  Thus, the legal landscape here is different than it was in *San Luis Obispo Coastkeeper*.

Finally, *San Luis Obispo Coastkeeper* concluded that the releases plaintiffs sought would interfere with a "fundamental function" of the Project: "to salvage all water that would otherwise be wasted to the ocean, and then conserve it underground . . . by limiting releases . . . . " ECF No. 175, Ex. 1 at 15.  The court reasoned that "releasing water that will necessarily flow into the ocean . . . conflicts with the express water conservation purpose of Twitchell Dam[,]" noting that the Secretary's report "expressly" distinguished water conservation from waste, "which means a flow of water to the ocean." *Id*., Ex. 1 at  15.  Here, deep drawdowns at Cougar and Lookout Point reservoirs will not interfere with a "fundamental function" of flood control, which is the only purpose expressly listed in the text of the Flood Control Act.  Pub. L. No. 81-516, 64 Stat. 163, 179 (1950).  Instead, deep drawdowns would curtail power production—an "other purpose" on equal footing with fish conservation—for a couple months a year while the injunction is place.  Thus, the Corps is wrong that a small reduction in power production to benefit an equally important use is "so foreign to the original purpose of the project that its implementation would be unlawful."  ECF No. 175 at 2–3 (internal quotations and citation omitted).

Dated:  April 30, 2021                         Respectfully submitted,

                                             /s/Lauren M. Rule
Lauren M. Rule (OSB #015174)
Elizabeth H. Potter (OSB #105482)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave, Suite B
Portland, OR  97202
Tel: (503) 914-6388
lrule@advocateswest.org
epotter@advocateswest.org

Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY                                    3