**VIA EMAIL**  July 26, 2021
Chambers of Judge Marco A. Hernández

  Re: *Northwest Environmental Defense Center, et al. v. U.S. Army Corps of Engineers, et al.,* 3:18-cv-437-HZ (D. Or.)

Judge Hernández:

Plaintiffs and Federal Defendants conferred on Friday, July 23, 2021, regarding the expert panel discussed in your draft injunction order of July 14, 2021 (ECF No. 194) and disagree as to the appropriate process and make-up of the panel. Plaintiffs and Federal Defendants therefore submit this letter with their respective positions regarding the expert panel and request a determination from the Court as to the participants on the panel and how the panel should operate. The parties recognize they and the expert panel need to act expeditiously in light of the fall 2021 and spring 2022 timeline for many of the actions ordered by the Court and thus are quickly seeking clarification from the Court after determining they would not be able to reach agreement on the expert panel process.[1]

Plaintiffs' Position:

The Court's July 14 Order establishes numerous tasks for an expert panel to flesh out details for a final injunction order. The Court proposed the panel consist of Plaintiffs' experts, at least two NMFS biologists, and at least one Corps engineer. Plaintiffs agree with that general make-up of the panel. Specifically, they believe the panel should be comprised of their two experts Richard Domingue and Kirk Schroeder, 2-3 NMFS biologists or other relevant NMFS experts, and 1 or more Corps engineers. That should provide sufficient biological, hydrological, and engineering expertise for the tasks at hand. Plaintiffs disagree that the team should include other agency personnel, such as representatives from U.S. Fish and Wildlife Service or U.S. Geological Survey, as they are not necessary for determining what operations are best for Upper Willamette River salmon and steelhead and feasible to conduct. As explained below, those agencies can review the expert panel's proposed implementation plans and offer feedback if there are concerns about impacts the panel did not consider. The larger the panel, the less effective and efficient it will be, and efficiency will be critical to complete the implementation plans in time to

---

[1] Due to the extreme urgency for an implementation plan for the Cougar deep drawdown this Fall, Plaintiffs have agreed to the Federal Defendants' general process *for this action only*. Federal Defendants have stated that in order to do the drawdown this Fall, under existing conditions, they need an approved implementation plan in place by September 1, 2021. The parties aim to submit a proposed implementation plan to the Court by August 20, 2021 for just the Cougar deep drawdown. Implementation plans for all other tasks will follow the process ordered by the Court in response to this letter, and the parties will submit deadlines for those tasks by August 10, 2021.

conduct the operations under the court's deadlines. Indeed, the panel proposed by Federal Defendants resembles the dysfunctional WATER team that has been in place under the 2008 biological opinion and which made little progress improving conditions for the threatened fish. Plaintiffs are agreeable with Federal Defendants' seven-member panel approach where the specific experts from NMFS and/or the Corps would be tailored to the actions being discussed at that particular meeting.

With regard to the process for the expert panel, Plaintiffs vigorously disagree with Federal Defendants' position because it essentially negates the expert panel and the independent voice of NMFS biologists. Federal Defendants have silenced NMFS biologists throughout this litigation, as this Court noted in its Draft Order, and one of Plaintiffs' primary concerns is that those biologists be able to fully express their opinions and work with Plaintiffs' experts independently, without interference, to craft proposed implementation plans that will be the most beneficial for salmon and steelhead. Corps engineers on the panel can offer expertise as to whether those plans are feasible to implement from a dam-operations and dam-safety perspective. These proposals can then be presented to and vetted by the parties and others for any unintended negative consequences or legal concerns. In sum, the exert panel should have first crack at developing the implementation plans for the injunction tasks without being influenced by the parties or their attorneys.

Federal Defendants' position basically eliminates the role of the expert panel by having NMFS work with the Corps, their attorneys and other members of the "Federal Family" to develop a draft implementation plan before ever conferring with Plaintiffs' experts. Having Federal Defendants develop a plan on their own that they then send to Plaintiffs' experts to review seems far from the vision expressed by the Court in its draft injunction order. Under Federal Defendants' approach, there is no way to know the independent views of NMFS biologists and whether those biologists' opinions have been influenced or overridden by other members of the "Federal Family" and their attorneys, or altered due to political or economic concerns, during development of the draft plans. Plaintiffs urge the Court to order an expert panel process that maintains the independence of NMFS biologists and directs them to work with others on the expert panel before the parties, their attorneys, and other federal agencies weigh in on proposed implementation plans. Federal Defendants' concern that Plaintiffs' process would not be productive or efficient is belied by the fact that the expert tasks outlined by the Court reflect actions that NMFS itself has been seeking and with which Plaintiffs' experts agree. Plaintiffs' remedy proposal, which forms the basis of these actions, arose largely from operations the agencies have considered, and NMFS has supported, for years. It seems far more efficient, and scientifically driven, to have NMFS biologists, Corps engineers, and Plaintiffs' experts fine-tune the details of the remedy operations during expert panel deliberations prior to obtaining feedback from the parties than to undertake Federal Defendants' approach of the parties exchanging competing proposals that will simply perpetuate an adversarial process.

To accomplish this dynamic, Plaintiffs propose that, once the members of the expert panel are identified, those members confer with each other via email, phone, video, or in-person meetings, to: (1) determine the deadlines for the tasks identified by the Court and then (2) develop implementation plans for those tasks (aside from the Cougar deep drawdown as noted in footnote 1). The panel will complete proposed implementation plans independently, and then will

distribute the proposed plans to the parties, including intervenors, and their attorneys, as well as other interested agencies, for review.[2] The expert panel will consider feedback on their proposed plans and may make adjustments to the plans based on that feedback. If the parties or their attorneys have concerns about the final implementation plans proposed by the expert panel, they can submit those concerns to the Court for its consideration in the final injunction order. Plaintiffs also do not believe attorneys and a court reporter need to be present during all communications of the expert panel but are willing to accept their presence during official meetings of the expert panel, whether in person or via video.

Federal Defendants' Position:

Based on the Court's Draft Order (specifically, the Court's denial of Plaintiffs' request for a Technical Advisory Team based on Ninth Circuit precedent) and the fact that the parties are in active litigation, Federal Defendants' understanding is that the Court does not intend to defer the terms of an injunction to an expert panel with no involvement of the parties, legal counsel, or the Court. Rather, Federal Defendants read the Draft Order as establishing a process where the expert panelists assist the parties with developing a joint proposed order for the Court's review. After careful consideration, and understanding that now is not the time to press general objections with the Court's Draft Order,[3] Federal Defendants have developed a plan for the expert panel process that takes advantage of the Federal government's expertise, is efficient, will allow the expert panelists to meaningfully engage, and will result in the panel being able to complete their assignments in a timely manner so that the Court may consider the proposed interim measures before the Corps must begin implementing those measures. The three aspects of Federal Defendants' plan—the proposed expert panel process, issues regarding legal counsel and court reporters, and the composition of the panel—are laid out below.

Proposed Expert Panel Process

Federal Defendants will first utilize all of the expertise within the Federal government (which includes the expert panelists from NMFS and the Corps) to produce a written proposal that answers each of the Court's expert assignments. This process will be collaborative and driven by agency employees, including NMFS biologists and Corps engineers. As the Court instructed, the written proposal will be developed in accordance with the best available science, technically feasible, incorporate principles of adaptive management, and provide meaningful research, monitoring, and evaluation of the interim measures. Federal Defendants will then share the written proposal with Plaintiffs a set number of days in advance of the expert panel meeting so that Plaintiffs' experts have time to consider the proposal and develop any questions or counter-

---

[2] The panel may proactively seek out information from the parties or other agencies to assist with development of the plans but the point of Plaintiffs' proposal is that the *panel* will determine the draft implementation plans based on its own internal deliberations.

[3] Federal Defendants do not agree with the Court's Draft Order. Federal Defendants, however, do not view this filing as the appropriate vehicle to raise or advance objections to the Draft Order. Without waiving any objections or arguments, Federal Defendants therefore are proceeding in this filing to meet the letter and spirit of the Court's Draft Order: to rely on experts, sound science, and accurate facts—not policy or legal arguments—to define the terms of a proposed order that the Court can review and, if appropriate, adopt as the Court's injunction.

proposals. If Plaintiffs' experts develop their own proposal in advance of the expert panel meeting, they can share it with the Federal experts on the same date. Alternatively, if Plaintiffs do not have a specific proposal but instead have general ideas or concerns regarding the answer to the expert assignment, they should share those with Federal Defendants' counsel as soon as possible so that the Federal government can consider those when developing its written proposal.

The expert panel would then meet (whether in person or via Zoom or another video platform) to discuss the Federal government's written proposal and any proposal that Plaintiffs' experts may develop. The panelists are free to discuss the science behind the proposal(s), any ideas that they might have to improve the proposals, etc. If there is disagreement between the panelists regarding the proposals or the panelists raise additional issues or questions that need to be resolved before an agreement can be reached, the expert panel meeting will adjourn and the Federal government will work to resolve those issues and questions. Further expert panel meetings can be held if necessary. Once the experts are in agreement and the answer to the assignment has been reviewed by counsel, Federal Defendants' counsel will submit the assignment to the Court for review. If an agreement cannot be reached and the experts are at an impasse, the parties can present their divergent views to the Court for resolution.

This process is lawful and far more workable than Plaintiffs' proposed process. As a preliminary matter, Plaintiffs' assertion that "Federal Defendants have silenced NMFS biologists throughout this litigation" is without basis. Obviously, NMFS is one of the Federal Defendants in this litigation and its positions are reflected in all of the filings submitted to the Court. If Plaintiffs have actual evidence of the contrary—that NMFS's views are not being represented—they should produce that evidence to the Court. The Department of Justice takes seriously its obligations to represent the United States, including the views of all affected Federal agencies (such as NMFS). We adhere to the Supreme Court's admonition that "the United States usually should speak with one voice before this Court, and with a voice that reflects not the parochial interests of a particular agency, but the common interests of the Government and therefore of all the people." *United States v. Providence J. Co.*, 485 U.S. 693, 706 (1988). Federal Defendants object to Plaintiffs' desire for NMFS to act alone, outside of the Executive Branch, to consult Plaintiffs' experts or provide input to the Court. NMFS is part of the Executive, not independent from it.

Plaintiffs' suggested process would also forbid the Federal government's expert panelists from speaking with other government employees or even their legal counsel about the expert assignments prior to meeting with Plaintiffs' expert panelists. This is not practical, given the expertise that might be needed to answer the Court's specific questions. Furthermore, this approach would have the effect of forbidding the agencies' legal representation. In addition, given the very specific assignments that the Court is requesting the expert panelists complete and the time that the panelists have to complete those tasks in, a "free-wheeling" discussion of the kind that Plaintiffs envision will occur at the expert panel will not be productive or efficient.

Legal Counsel and Court Reporters

Legal counsel should be present at the expert panel meetings. Simple fairness dictates that Federal government's experts should not be forced to participate in a legal process (i.e.,

developing a joint proposed order for the Court's review) without being represented by counsel.[4] Moreover, because the Federal government's experts know and/or have privileged information, it is impossible to ensure that the government's rights are protected and the Oregon Rules of Professional Conduct are being complied with if Plaintiffs have ex parte access to and contact with the government's experts (through their own experts) at the panel meetings. *See* Oregon Rules of Professional Conduct 4.2 (In representing a client, "a lawyer shall not communicate or cause another to communicate on the subject of the representation with a person the lawyer knows to be represented by a lawyer on that subject" unless certain exceptions apply); *Brown v. State of Or. Dep't of Corrections*, 173 F.R.D. 265, 269 (D. Or. 1997) ("[T]he Oregon State Bar states that an attorney making ex parte contacts with either current or former employees must be extremely cautious to avoid invading the attorney-client privilege claimed by the opposing party."); Oregon Rules of Professional Conduct 4.4 (lawyers cannot "knowingly use methods of obtaining evidence that violate the legal rights of such a person"). Finally, it is important for the Federal government's counsel to be present at the expert panel meetings as the experts are developing a proposed order that, once entered, carries the threat of contempt. It is critical that the proposed order the panelists submit to the Court for consideration be implementable from a sound scientific, technical, and legal perspective (e.g., the language used does not inadvertently mean Federal Defendants could be held in contempt due to factors beyond its control or for any negligible deviation). *See, e.g.*, Fed. R. Civ. P. 65.

A court reporter should also be present at all of the expert panel meetings to transcribe the proceedings. As mentioned above, the expert panel meetings are a legal process that has legal consequences. The expert panel meetings are therefore part of the record in this case and should be transcribed. The transcripts would also allow the Court to review the expert panelists' discussions in the event that Plaintiffs argue the expert panel meetings are not meaningful or if the Court has to resolve a dispute between the parties. As the Ninth Circuit has explained, failing to create a record of expert discussions used in the litigation and when granting relief can frustrate appellate review and "undermine our confidence that the district court acted independently." *See, e.g.*, *Fed. Trade Comm'n v. Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1214 (9th Cir. 2004). Federal Defendants will be responsible for ensuring that a court reporter will be present at all of the panel meetings.

Expert Panel Composition

The Court stated in its Draft Order that it envisions the expert panel consisting of Plaintiffs' experts, at least two of NMFS' fish biologists, and engineer(s) from the Corps that can advise on the dam-operations aspects on the interim measures. ECF 194 at 12-13. Federal Defendants agree that these experts should participate in the panel. However, the Court should not limit the number of experts that Federal Defendants can have on the panel because completing the Court's assignments and meaningfully engaging with Plaintiffs' experts could require several experts with different knowledge and skill sets. For example, completing an expert assignment could require two NMFS fish biologists as well as a NMFS expert in fish passage, multiple Corps engineers with expertise ranging from dam safety to hydraulic design to geology to reservoir

---

[4] Plaintiffs' counsel and/or the counsel for Plaintiffs' expert panelists are also welcome to attend the meetings.

operations, or experts from other agencies like the U.S. Fish and Wildlife Service (to ensure that ESA-listed bull trout will not be adversely impacted by the operations) and the U.S. Geological Survey. In particular, Corps engineers are specialty-focused, and it would be professionally irresponsible for an engineer to advise on matters outside of his or her engineering discipline. Because the potential engineering considerations posed by the Court's expert assignments cut across multiple specialty areas, multiple Corps engineers will be needed on the expert panel. Federal Defendants will endeavor to keep the number of expert panelists that participate in any one expert panel meeting small so that the process is manageable. The Federal government would choose the expert panelists for a particular expert panel meeting based on the subject that is being discussed at that meeting.

If the Court is not inclined to allow Federal Defendants to choose the number of Federal experts that should participate on the panel, Federal Defendants propose that the Court establish a seven person panel consisting of two of Plaintiffs' experts, two of NMFS' experts, two of the Corps' experts, and one "ad hoc" Federal expert that could participate as needed based on that meeting's discussion. This proposal may limit the ability of the experts to meaningfully engage, as all of the needed individuals with expertise might not be present at a meeting due to the limited number of participants.

Respectfully submitted,

>    */s/Lauren M. Rule*
>    Lauren M. Rule (OSB #015174)
>    Elizabeth H. Potter (OSB #105482)
>    ADVOCATES FOR THE WEST
>    3701 SE Milwaukie Ave, Suite B
>    Portland, OR 97202
>    Tel: (503) 914-6388
>    lrule@advocateswest.org
>    epotter@advocateswest.org
>
>    Attorneys for Plaintiffs
>
>    JEAN E. WILLIAMS, Deputy Assistant Attorney General
>    SETH M. BARSKY, Chief
>    S. JAY GOVINDAN, Assistant Chief
>
>    */s/ Kaitlyn Poirier*
>    KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
>    U.S. Department of Justice
>    Environment and Natural Resources Division
>    Wildlife and Marine Resources Section
>    Ben Franklin Station, P.O. Box 7611
>    Washington, D.C. 20044-7611
>    Tel: (202) 307-6623
>    Fax: (202) 305-0275

kaitlyn.poirier@usdoj.gov

Attorneys for Federal Defendants