TODD KIM, Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
MICHAEL R. EITEL, Senior Trial Attorney
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov; michael.eitel@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER, et al., | Case No.: 3:18-cv-00437-HZ |
| Plaintiffs, | FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' EXPERTS' DISSENT TO THE COUGAR DRAWDOWN IMPLEMENTATION PLAN |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, et al., | |
| Defendants, | |
| and | |
| CITY OF SALEM and MARION COUNTY, | |
| Defendant-Intervenors. | |

## INTRODUCTION

Federal Defendants provide this response to the Plaintiffs' experts' dissent to one aspect of the Cougar fall drawdown implementation plan submitted to the Court on August 20, 2021 (ECF 208-1). While Plaintiffs' experts "fully support the operational aspects of the implementation plan to achieve the fall drawdown", they "feel more information could be collected to inform future fall drawdowns as well as development of a more comprehensive RM&E plan." *Id.* at 10. Specifically, Plaintiffs' experts propose releasing: (1) between 3,000 and 5,000 juvenile hatchery fish with passive integrated transponders ("PIT") tags[1] at the head of Cougar Reservoir in September to monitor the effects of the drawdown on migration timing through the reservoir and dam; (2) an additional 6,000 hatchery fish with PIT tags near Cougar Dam in the early part of the drawdown (mid- to late October); and (3) 6,000 more hatchery fish with PIT tags when the reservoir is near 1505 feet (November 15).[2]

The United States' experts are supportive of this type of research and would certainly be willing to discuss it when the expert panel meets to develop a more detailed RM&E plan for Cougar fall drawdown operations in 2022 and beyond. *See id.* at 6. However, this research cannot be carried out this year because of Federal procurement and fiscal laws and regulations and the short timeframe between now and when the research would be carried out.

**A.    The United States retains the discretion to determine how it should carry out RM&E that the expert panel proposes, as well as to negotiate its own contracts.**

As an initial matter, Plaintiffs' experts note in their dissent that the Oregon Department of Fish and Wildlife ("ODFW") "has expressed a willingness to use their tags to expedite their study if they could be reimbursed or get replacement tags." *Id.* at 11. But the expert panel's task is to "propose specific RM&E to accompany the interim measures," not to advise or direct the United States on

---

[1] PIT tags are transponders inserted into fish that can help track fish movement. The tags are read by antennas as the fish swim past them.
[2] The specifics of the proposed research are in the draft implementation plan that Plaintiffs' experts submitted to the United States' experts.

precisely how it should carry out that RM&E. *See* Draft Order, ECF 194 at 13. The United States retains discretion under the Court's Draft Order to determine how it should carry out any RM&E that the expert panel includes in its implementation plan and the Court agrees with. For example, the United States alone should determine whether an agency can complete the RM&E or a contractor needs to perform the work. As such, it is not proper for the expert panel to specify how the United States should accomplish the RM&E the expert panel proposes in their implementation plan.

Similarly, the expert panelists do not have the authority to discuss or negotiate any contracts on behalf of the United States. Only Federal contracting officers acting within the scope of their authority are authorized to obligate the United States by contract for the purchase of supplies and services. 48 C.F.R. § 1.601(a); *id.* § 1.602-1(a). Contracting officers are prohibited from entering into a contract "unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met." *id.* § 1.602-1(b). It is important to ensure that any discussions with ODFW (or any other potential contractor) meet these requirements. Moreover, if expert panelists engage in such discussions, they could inadvertently make it more difficult (i.e., more expensive) for the United States to enter into a contract with a contractor to perform this work, as the contractor knows the United States must enter into a contract in a short period of time.[3] Thus, it is important that the panelists refrain from communicating with potential contractors and informing the United States how it should carry out the RM&E outlined in the implementation plans from a funding, contractual, and staffing perspective.

---

[3] The original proposal for the Cougar fall drawdown provided to the United States by Plaintiffs' experts stated that "[h]atchery salmon are available at McKenzie Hatchery for conducting paired release tests of the drawdown in 2021" and "ODFW currently has a seining crew with tagging experience into October, and equipment in place." These statements, and other statements made at the first expert panel meeting, raise concerns regarding the expert panel communicating with potential contractors. Potential contractors might view the expert panelists as having some imprimatur of authority from the Court. Discussions with ODFW would be especially concerning given that ODFW is an amicus in this litigation.

Response to Plaintiffs' Experts' Dissent to the Cougar Drawdown Implementation Plan - 2

**B.    The Corps cannot complete Plaintiffs' experts' proposed research this year.**

Plaintiffs' experts' proposed research would require: (1) obtaining the PIT tags necessary to complete the research; (2) procuring hatchery fish for use in the research, including procuring at least 3,000 hatchery fish for use in September, with a total of at least 15,000 fish by November 15; (3) obtaining the equipment necessary (anesthetic, etc.) to PIT tag the fish; and (4) manually inserting the PIT tags into the fish and releasing them during specific times at designated locations. Given the short time before this research is slated to begin and the resources the Corps currently has available and can utilize, the Corps cannot complete this research on its own this year.[4] Therefore, this research would require the Corps to enter into a contract with a contractor to procure some of the necessary materials and conduct the research. But there is also insufficient time for the United States to issue a contract that complies with Federal laws and regulations before this research would need to commence.

Congress has enacted extensive and complex laws governing the acquisition activities of all executive agencies, including the Corps. This includes the establishment of the Federal Acquisition Regulatory Council to promulgate Government-wide procurement regulations, known as the Federal Acquisition Regulation ("FAR"). 41 U.S.C. §§ 1302-03; 48 C.F.R. § 1.101. Unless excluded by law, the FAR applies to all acquisitions by contract with appropriated funds of supplies and services by, and for the use of, the Government through purchase or lease, including all types of commitments that obligate the Government to an expenditure of appropriated funds in writing. 48 C.F.R. § 1.104; *id.* § 2.101. In addition to the FAR, the Corps is subject to the Defense Federal Acquisition Regulation Supplement ("DFARS"), 48 C.F.R. chapter 2, and the Army Federal Acquisition Regulation Supplement ("AFARS"), 48 C.F.R. chapter 51.

---

[4] The Corps does have enough PIT tags on hand to conduct this research. But it does not have the other equipment necessary for tagging the fish. Nor does it have personnel with sufficient expertise to safely tag the fish.

Response to Plaintiffs' Experts' Dissent to the Cougar Drawdown Implementation Plan - 3

The FAR, DFARS, and AFARS contain procedural and substantive requirements that the Corps must comply with both prior to, and following, the award of a contract. With certain limited exceptions, contracting officers must provide for full and open competition through the use of competitive procedures in soliciting offers and awarding government contracts. 10 U.S.C. § 2304; 41 U.S.C. § 3301; *see also* 48 C.F.R. part 6. These requirements also include minimum time periods for posting required notices and solicitations prior to awarding a contract. *See, e.g.*, 48 C.F.R. § 5.203(a) (synopsis of proposed contract action must be posted for at least 15 days before issuance of a solicitation), *id.* § 5.203(c) (solicitation must allow at least 30 days for receipt of bids or proposals).

One of the exceptions to the full and open competition requirements, outlined above, is that an agency can enter into a contract after soliciting and negotiating with only one source (known as "sole source" contracts). *See* 10 U.S.C. § 2304(c); 41 U.S.C. § 3304; 48 C.F.R. § 2.101; *see also* 48 C.F.R. subpart 6.3. Sole source contracts must be specifically authorized by statute and justified in accordance with 48 C.F.R. § 6.303, and approved by the appropriate approval authority pursuant to 48 C.F.R. § 6.304. Under these regulations, a sole source contract for the research that Plaintiffs' experts propose would likely not be authorized and justified in this situation and may not be approved. *See* 48 C.F.R. § 6.302-1 to § 6.302-7; 48 C.F.R. § 6.304. That means the Corps would not be able to sole source a contract for the research and would instead have to comply with the full and open competition requirements for solicitation and evaluation of offers prior to awarding a contract.[5]

Consequently, even if the Court agreed with Plaintiffs' experts' research plan for this year and entered an order on September 1, it is not feasible for the Corps to complete the contract award process before the end of October given the requirements and time periods outlined in the acquisition regulations. That means the Corps could certainly not complete the release of thousands of PIT tagged fish by September and October and would, in all likelihood, not be able to complete the releases on

---

[5] And the contract would not necessarily be awarded to ODFW as envisioned by Plaintiffs' experts.

November 15 given the time it would take to prepare and issue a solicitation, evaluate offers, award the contract and, once awarded, for the contractor to mobilize and implement the research.

Furthermore, despite Plaintiffs' experts' suggestion, the United States cannot retroactively reimburse ODFW for their services and tags. This would create an obligation for the expenditure of appropriate funds without ensuring compliance with fiscal laws and complying with procurement laws/regulations by awarding a contract for the services in advance of performance. This is not permitted under the FAR, DFARS, or AFARS. *See* 48 C.F.R. § 1.602-1(b); *id.* § 1.602-2(a). It also may not be permitted under the Anti-Deficiency Act. *See* 31 U.S.C. §§ 1341-42 (prohibiting any employee of the governemnt, unless authorized by law, from authorizing an expenditure or obligation exceeding an amount available in an appropriation, involving the government in a contract or obligation for the payment of money in advance of an appropriation, and accepting voluntary services).

**C.      The United States' experts included additional research in the implementation plan because it could not accommodate Plaintiffs' experts' request.**

As mentioned previously, the United States' experts are supportive of the type of research that Plaintiffs' experts have proposed. However, because that research cannot be accomplished this year, the United States' experts proposed releasing marked juvenile spring Chinook fish (if available) to help measure downstream passage efficiency. ECF 208-1 at 7. The United States did not include this research in its original proposal to Plaintiffs' experts, but added it when Plaintiffs' experts shared their concerns that downstream passage efficiency would not be measured this year. So, if fish are available, there will be research this year that measures downstream passage efficiency. Moreover, the expert panel will soon discuss conducting Plaintiffs' experts' research in future years. Therefore, the Court does not need to require the Corps to implement Plaintiffs' experts' proposed research this year.

**CONCLUSION**

For all of the above reasons, the Court should decline to include the research that Plaintiffs' experts outlined in their dissent in any order or require the Corps to complete that research this year.

Dated: August 25, 2021

Respectfully submitted,

TODD KIM, Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief

/s/ *Kaitlyn Poirier*
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorneys for Federal Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2021, a true and correct copy of the above document was

electronically filed with the Clerk of Court using CM/ECF. Copies of the document will be served

upon interested counsel via the Notices of Electronic Filing that are generated by CM/ECF.

/s/ *Kaitlyn Poirier*
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorney for Federal Defendants

Response to Plaintiffs' Experts' Dissent to the Cougar Drawdown Implementation Plan - 7