Lauren M. Rule (OSB #015174)
Elizabeth H. Potter (OSB #105482)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave. Ste. B
Portland, OR 97202
(503) 914-6388
lrule@advocateswest.org
epotter@advocateswest.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER**, **WILDEARTH GUARDIANS**, and **NATIVE FISH SOCIETY**, <br><br>            Plaintiffs, <br><br>    v. <br><br> **U.S. ARMY CORPS OF ENGINEERS** and **NATIONAL MARINE FISHERIES SERVICE**, <br><br>            Defendants, <br><br>    and <br><br> **CITY OF SALEM** and **MARION COUNTY**, <br><br>            Defendant-Intervenors, | Case No.  3:18-cv-00437-HZ <br><br> **PLAINTIFFS' BRIEF ON EXPERT IMPLEMENTATION PLANS FOR COUGAR AND FOSTER FALL OPERATIONS (ECF # 208)** |

On August 20, 2021, Federal Defendants filed a notice submitting the implementation plans developed by the expert panel for the Cougar fall deep drawdown and the Foster fall spill operations (ECF # 208), as directed by this Court in its draft injunction order (ECF # 194 at 15-16).  In that filing, Federal Defendants raised—over Plaintiffs' objections—improper arguments that went far beyond simply notifying the Court of the expert panel's implementation plan.  As to the substance of that plan, the expert panel successfully came to agreement on the details of how to implement each operation this fall.  However, the expert panel did not fully agree on the Research, Monitoring, and Evaluation (RM&E) that should be conducted to assess these operations.  Plaintiffs therefore are filing this brief to address those two points.

### A. Federal Defendants Included Arguments in the Notice That Were Inappropriate.

Plaintiffs object to the argument Federal Defendants raised in the notice for several reasons.  First, including any legal argument in this notice was inappropriate.  The implementation plans are created jointly by Plaintiffs' and Federal Defendants' experts and other government scientists, so the plans should be submitted jointly by the parties' counsel on behalf of those experts.  Accordingly, the notices submitting the experts' plans should be just that—a simple, agreed-upon notice that the experts are submitting the attached plans.  The notices should not be an opportunity for one party to provide legal arguments or commentary on the plans; any such argument should be included in the brief that each party is allowed to file following submission of each plan.  Plaintiffs request the Court clarify that subsequent notices should only include language that the parties agree upon and the briefs are the proper vehicle for the parties to raise any arguments or other commentary.

Second, Plaintiffs object to Federal Defendants' argument in the notice because it is entirely unnecessary.  The Court is undoubtedly capable of determining how to properly

incorporate the implementation plans into its final injunction order in compliance with Rule 65. Plaintiffs only response to Federal Defendants' point about the proper use of the plans is that the Court has wide discretion when fashioning injunctive relief and Plaintiffs are confident the Court will use that discretion appropriately.

As to the language Federal Defendants suggest the Court include in its order, Plaintiffs do not see the need for it when the implementation plans themselves repeatedly recognize that the details of the operations may change to address flood control and/or dam safety needs or due to changing hydrologic conditions.  *See* ECF # 208-1 at 1, 2, 3, 4, 5; ECF # 208-2 at 1, 2, 3, 4. Indeed, the Court recognized that principle in its draft order.  ECF # 194 at 13 (stating that the Corps shall implement the measures to the greatest extent practicable under existing hydrologic conditions and necessary flood control operations).  Plaintiffs leave up to the Court the language it deems appropriate for the final injunction order.

Finally, Federal Defendants also included commentary in the notice about the effects of the Cougar drawdown plan on the biological opinion's flow targets.  The panel noted the recommended flows exceeded the flow targets but still included the higher flows in their plan, ECF # 208-1 at n.1, clearly indicating they considered the higher flows for the drawdown more important than meeting the biological opinion flow targets.  If Federal Defendants wanted to make any argument on the issue, they should have done so in a brief.  Because the expert panel based its recommendation on the best available science, the Court should adopt that proposal.

### B. Federal Defendants Improperly Rejected RM&E Measures Proposed by Plaintiffs' Experts.

As noted above, the expert panel reached agreement on the details of the Cougar and Foster fall operations even under an expedited timeline for these plans.  The final Cougar plan, however, excluded an important RM&E action that Plaintiffs' experts recommended.  The Corps

PLAINTIFFS' BRIEF ON COUGAR AND FOSTER EXPERT PLANS                    2

rejected this RM&E due to financial and administrative reasons even though it appears to be technically feasible to implement this fall. Plaintiffs are concerned about the Corps' experts rejecting this measure for non-scientific reasons. The panel should rely on the *best available science* to make its proposal, and any arguments that cost or administrative constraints will preclude certain RM&E or other actions should come from the parties in their briefs.

Plaintiffs' experts recommended multiple RM&E activities for the Cougar drawdown implementation plan, with accompanying explanation for those actions. Federal Defendants' experts rejected one of the key actions needed to evaluate passage rate and survival—a PIT tag study that could be implemented by Oregon Department of Fish and Wildlife (ODFW) this fall if the Corps reimbursed ODFW for the cost of the PIT tags or replaced the tags.[1] ECF # 208-1 at 11. The Corps' experts claimed that federal procurement and fiscal laws and regulations prohibited them from reimbursing ODFW for the PIT tags or replacing tags and there was no time to issue a contract for the work before this fall. *See id*. Instead, the final plan stated that the Corps would release marked (adipose fin clipped) juvenile fish, if they are available by mid-

---

[1] Plaintiffs' experts originally proposed the following: "Conduct studies to evaluate passage rate and survival (note that given the short timeline these studies would provide preliminary information to develop additional studies in future years and to compare to previous studies).
  1. PIT tag 3,000–5,000 juvenile hatchery fish and release in the South Fork McKenzie River upstream of the or at the head of the reservoir in September to monitor the effect of drawdown on migration timing through the reservoir and through the dam. (note: given the short timeline for development of this implementation plan, ODFW has tentatively proposed to use tags on hand and personnel to tag and release fish needed for this study; the Corps will reimburse ODFW for tags or replace tags as part of this RM&E plan).
  2. Conduct a paired release study during fall drawdown using juvenile hatchery salmon as surrogates (note that in the future, surrogate fish would be used to help evaluate passage measures). PIT tag 12,000 fish that could be released in four groups: 3.000 to be released upstream of the dam and 3,000 downstream of the dam in the early part of the drawdown; 3.000 upstream of dam and 3,000 downstream when reservoir is near or at target level. Downstream sampling would include trap nets in Leaburg Reservoir and detections in the Walterville Canal fish bypass outlet."

October, into the reservoir to help assess fish passage efficiency, and that PIT tagging studies would be carried out in future years. *Id.* at 7.

Plaintiffs have two concerns about the RM&E outcome: the failure to conduct an important study to assess the effectiveness of the Cougar deep drawdown, and the rejection of that action by the Corps' experts for non-scientific reasons. Plaintiffs' experts explained in their original proposal that the PIT tag study could provide information about migratory behavior downstream of the dam and long-term survival of outmigrants—information that cannot be gleaned by just using screw traps. As they stated in their dissent to the final plan, tag-based studies would provide much more useful information and are feasible to conduct this fall given ODFW's apparent willingness to participate. ECF # 208-1 at 10-11. In contrast, the final plan's substitute proposal to release fin-clipped juvenile fish into the reservoir once during the drawdown and assess survival through screw trapping below the dam would not be able to track results of individual fish, assess long-term survival downstream, or compare passage of fish released at different locations and different times during the drawdown.

The importance of collecting as much information as possible during these operations cannot be understated as research and monitoring is the only way to assess whether these operations are improving fish passage. By failing to incorporate this important monitoring action into the final plan for the Cougar deep drawdown, Federal Defendants are missing an important research opportunity for assessing this key passage measure—especially when it could provide unique information during a very low water year.

Plaintiffs are also concerned that the Corps' experts rejected the PIT tag study due to funding and contractual constraints, and included the following language in the final expert plan: the "Corps will attempt to conduct the RM&E as outlined in this proposal in fall 2021, but there

is uncertainty regarding the availability of fish, equipment, personnel and funding necessary to carry out such activities . . . " and that "RM&E activities that were not already planned to occur in fall 2021 are subject to the Corps being able to reprogram or reallocate sufficient funding to carry out those activities in accordance with applicable fiscal laws and authorities . . . ." ECF # 208-1 at 6 & n.6. These are the same excuses the Corps has been using for years to avoid conducting many of the actions that biologists deemed necessary to help these fish. The Corps should not be able to continue to hide behind these same excuses to avoid conducting actions that are important for remedying their ESA violations.

Finally, the role of the Corps' experts is to work with the other experts on the panel to create implementation plans, including RM&E, that are "in accordance with the best available science, technically feasible, incorporate principles of adaptive management, and provide meaningful research, monitoring, and evaluation ("RM&E") of the interim measures." ECF # 194 at 13. The RM&E proposed by Plaintiffs' experts is the most meaningful research for the Cougar deep drawdown that can be accomplished this fall and is based on the best available science. The Corps' experts did not dispute the usefulness of this research and agreed that it would be part of future RM&E plans for subsequent drawdowns. Thus, that proposal should have been included in the final implementation plan. If Federal Defendants want to argue that they cannot implement RM&E for legal reasons or lack of funding, they should provide that argument in their subsequent brief and include a full explanation of why it is impossible to implement. Plaintiffs request the Court clarify that the expert panel must base its plan on science and cannot reject actions for non-scientific reasons; that the parties must raise and explain such non-scientific considerations in their briefs; and that the Corps must implement the PIT-tag study for the Cougar deep drawdown this fall.

PLAINTIFFS' BRIEF ON COUGAR AND FOSTER EXPERT PLANS                                    5

Dated:  August 25, 2021          Respectfully submitted,

                                                                                     /s/Lauren M. Rule
                                                                     Lauren M. Rule (OSB #015174)
Elizabeth H. Potter (OSB #105482)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave, Suite B
Portland, OR  97202
Tel: (503) 914-6388
lrule@advocateswest.org
epotter@advocateswest.org

Attorneys for Plaintiffs