TODD KIM, Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
MICHAEL R. EITEL, Senior Trial Attorney
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov; michael.eitel@usdoj.gov

Attorneys for Federal Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER, et al., | Case No.: 3:18-cv-00437-HZ |
| Plaintiffs, | FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF ON THE EXPERT PANEL'S SUBMISSION FOR INJUNCTION ACTION 10(a) (ECF 214) |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, et al., | |
| Defendants, | |
| and | |
| CITY OF SALEM and MARION COUNTY, | |
| Defendant-Intervenors. | |

**INTRODUCTION**

Federal Defendants provide this response to Plaintiffs' brief on the expert panel's submission for Injunction Action 10(a) (ECF 214).

**I.      Disagreement Regarding Increasing Outflows in September**

The expert panelists disagree on when to begin increasing outflows at Detroit Dam so that the reservoir can reach an elevation of 1465' (the elevation at which the Detroit lower ROs can be used for temperature control purposes) by mid- to late October this year. Plaintiffs' experts recommend that the Corps increase outflows "immediately to at least 2,000 cfs." Expert Panel's Response to Injunction Action 10(a), ECF 213-1 at 12. But this recommendation is based on a misunderstanding of how inflows are calculated and other errors.

First, Plaintiffs have incorrectly calculated inflows. To lower Detroit Reservoir to elevation 1465' by mid- to late October, the Corps will need to discharge water that is currently in the reservoir plus any inflows that are occurring due to rain or other precipitation events. Inflows are calculated by analyzing the changes in reservoir elevation, which are then converted to storage volumes (amount of water in acre feet) based on a rating table. Plaintiffs' experts, however, mistakenly calculated inflows by adding the inflow gage readings above the dam. *See* Emails from Richard Domingue on 9-9-21, Attachment 1 at 1. Plaintiffs' mistaken calculations have led to an overestimation of inflow by about 100 cfs per day, resulting in a perceived need to increase outflows to 2,200 cfs in September to achieve elevation 1465' by mid- to late October.

Second, Plaintiffs' experts did not convert the volume of water to be discharged from Detroit Reservoir to cfs. Plaintiffs' experts concluded that, if the Corps holds outflows at 1,500 cfs through September, the Corps would need to discharge 3,500 cfs from October 1 to 15 to reach elevation 1465'. *See id.* at 1-3. Plaintiffs' experts made that calculation by dividing their estimated volume of water remaining in Detroit Reservoir on October 1 by 15 days. *See id.* But as noted in Federal

Response to Plaintiffs' Brief on the Expert Panel's Submission for Injunction Action 10(a) - 1

Defendants' opening brief, the volume of water in acre feet needs to be converted to cfs (by dividing the volume of acre feet by 1.98) to determine the amount of outflows needed. Because Plaintiffs' experts did not make that conversion, they overestimated the amount of discharge that would be need to occur to reach elevation 1465' by mid- to late October. *See id.*; ECF 214 at 2 ("The Corps states that it will reassess on October 1 to determine if it needs to adjust flows but at that point, in order to achieve reservoir elevation 1465' by mid-October, discharges would have to be very high, likely exceeding 3500 cfs and creating excessive TDG below the dams.").

In sum, Plaintiffs' experts' conclusions that the Corps must increase discharges in September are based on incorrect calculations. The United States has the expertise to develop operations that accomplish the expert panel's implementation plans and its expertise is entitled to deference here, not only because the United States' calculations are correct, but also because its implementation plan is better for salmonids.[1] *See* Federal Defendants' Response to the Expert Panel's Submission for Injunction Action 10(a), ECF 215 at 1-3.

## II.    Communications Between Expert Panelists

Plaintiffs ask the Court to clarify that "individual members of the expert panel can seek scientific information or scientific opinions from other individual members of the expert panel to assist with the open and free discussion needed to fully vet the injunction actions and arrive at implementation plans that are the best result for the fish." ECF 214 at 5. Plaintiffs' request stems from the fact that their experts have attempted to single out NMFS employees, implying that their opinions differ from those that the United States collectively provides at expert panel meetings and when providing comments and feedback on Plaintiffs' proposed implementation plans. *See* Attachment 1 (addressing an email specifically to NMFS' experts); Email from Richard Domingue on 9-10-21,

---

[1] The Corps will use principles of adaptive management if hydrologic conditions change this fall and increased outflows are needed.

Attachment 2 ("Also, the Corps has dominated expert panel discussions and document preparation. You bring unique and valuable skills to the expert panel process. We value and respect your input. Please feel free to provide your comments or new information to the process.").

As a preliminary matter, Plaintiffs have not provided any evidence of improper conduct during the expert panel meetings—by any of the United States' experts—despite having transcripts available to review. NMFS experts have participated, and will continue to participate, in the Court-ordered expert panel process fully and in good faith. Plaintiffs' experts' insinuations that NMFS disagrees with the positions presented by the United States at the panel meetings or is somehow not able to fully participate in the expert panel process are unfounded. NMFS reviews analyses for each of the injunction actions and helps prepare proposed implementation plans prior to meeting with Plaintiffs' experts[2], participates in the expert panel meetings, and contributes to all of the comments and edits that the United States' experts make to Plaintiffs' implementation plans as well as the briefs the Department of Justice submits to this Court.

In any event, Plaintiffs' experts are welcome to seek information or scientific opinions from the United States' expert panelists. Plaintiffs' experts have already done so and they can continue to do so within the bounds of the Court's order establishing the expert panel process. But Plaintiffs should not be permitted to instruct the United States or its experts on what opinions to provide. Nor should Plaintiffs be able to dictate whether the United States' experts speak with other employees from their same agency, with other agencies, or with the other United States' experts, prior to providing information and opinions to Plaintiffs' experts. As Federal Defendants have explained a number of times, and consistent with the Supreme Court's admonition, "the United States usually

---

[2] The United States has offered to share these proposed implementation plans with Plaintiffs' experts prior to any expert panel meetings to facilitate the conversations and provide a concrete proposal for analysis and consideration. Plaintiffs' counsel has refused and prefers that the United States not provide Plaintiffs' experts with any written proposals in advance of the meetings.

should speak with one voice before this Court, and with a voice that reflects not the parochial interests of a particular agency, but the common interests of the Government and therefore of all the people." *United States v. Providence J. Co.*, 485 U.S. 693, 706 (1988). Plaintiffs' experts should not continue attempting to segregate the United States' experts' positions by person or agency and perpetuating the false narrative that NMFS is being "silenced" in this litigation. *See* Letter from Parties to the Court, ECF 196 at 2. The National Oceanic and Atmospheric Administration's Office of General Counsel has requested that Plaintiffs' experts refrain from making such individualized requests in the future.

## CONCLUSION

The Court should allow the Corps to manage outflows at Detroit Dam as necessary to reach elevation 1465' by mid- to late October.


Dated: September 16, 2021

Respectfully submitted,

TODD KIM, Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief

/s/ *Kaitlyn Poirier*
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorneys for Federal Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2021, a true and correct copy of the above document

was electronically filed with the Clerk of Court using CM/ECF. Copies of the document will be served

upon interested counsel via the Notices of Electronic Filing that are generated by CM/ECF.

<div style="margin-left:40%">

/s/ Kaitlyn Poirier
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorney for Federal Defendants

</div>