IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST ENVIRONMENTAL DEFENSE CENTER, WILDEARTH GUARDIANS, and NATIVE FISH SOCIETY,

        Plaintiffs,

    v.

UNITED STATES ARMY CORPS OF ENGINEERS and NATIONAL MARINE FISHERIES SERVICE,

        Defendants.

CITY OF SALEM and MARION COUNTY,

        Intervenor-Defendants.

No. 3:18-cv-00437-HZ

ORDER

HERNÁNDEZ, District Judge:

The Court charged the Expert Panel[1] with the task of making a recommendation on whether the interim fish passage and water quality operations at Detroit and Big Cliff dams

---

[1] Regarding the parties' dispute pertaining to certain communications between the experts, *see* ECF 219-1, the Court reminds the parties that the purpose of the Expert Panel is to encourage the free and open discussion of the biological and technical aspects of the injunction measures to

1 –    ORDER

should be modified to incorporate use of the lower regulating outlets ("ROs") at Detroit Dam for water temperature control purposes. Interim Inj. 10(a), ECF 212. The Expert Panel recommends use of the lower ROs at Detroit Dam and proposes revisions to Interim Measure 5 (adopted and ordered in Interim Injunction No. 10) that will permit the Corps to begin the temperature control operation by mid-October. ECF 213, 215-1. Plaintiffs' experts, however, disagree with the Expert Panel's proposal to the extent that it recommends delaying increased discharge operations until October.

Before the lower ROs can be used at Detroit Dam, the reservoir must be within 100 feet or less of the lower RO opening. Presently, the reservoir elevation is above this threshold elevation (1,465'), such that water discharges at the dam will need to be increased from the current daily rate of 1,500 cubic feet per second ("cfs") before the lower ROs can be used by mid-October. Concurrently, September and October are peak times for Chinook salmon spawning, meaning redds are actively being laid below the dams during this time. Increasing discharge flows during spawning season can lead to dewatering of salmon redds laid in the higher water level when the discharge flows are decreased later in the year. Thus, the need for increased flows to begin use of the lower ROs for water temperature control purposes is in tension with the need to maintain somewhat regular flows to avoid redd dewatering during salmon spawning and incubation.

---

provide the most benefit for the listed salmonids. That process should not be unduly interfered with by the attorneys. The Court finds nothing objectionable about Plaintiffs' panel-expert, Mr. Domingue, seeking the NMFS panel-experts' opinions in an email on which all panel members and attorneys were copied. Defendants advance that they must speak with one voice in this litigation; however, the Court fails to see how that notion applies to Mr. Domingue's requests for new information pertaining to redd dewatering or whether the NMFS experts' agreed that his analysis supported immediately increasing discharges at Detroit Dam. These are the types of questions and discussions the Expert Panel should be having as they develop the implementation plans for the injunction measures.

2 –        ORDER

The Expert Panel proposes delaying increasing discharges until October 1 to limit the amount of time that higher flows overlap with fish spawning. Plaintiffs' experts contend that discharge needs to be increased to at least 2,000 cfs per day now to ensure the reservoir is drawn down far enough to start operating the lower ROs in mid-October without exceeding flow targets and total dissolved gas limits. Plaintiffs further argue that the benefits of temperature control operations outweighs the risk of dewatering because abnormal water temperatures affect all redds below the dams whereas only some redds would be dewatered by changes in discharge rates.

The Court shares Plaintiffs' concern that the Expert Panel's plan to increase discharge rates to 2,716 cfs per day beginning October 1 seems to leave little margin for error for passing increased flows caused by precipitation events without exceeding the 2008 BiOp's limit of 3,000 cfs. Nonetheless, given Defendants' assertion that even "[i]f inflows were to increase to October average flows, the Corps could still discharge enough water to achieve elevation 1465' by October 15," the Expert Panel's proposal to delay increasing discharges until October 1 is acceptable. Def. Resp. 2, ECF 218. Therefore, the Court amends Interim Injunction 10 and 10(a) (ECF 212) and ORDERS as follows:

(10) The Corps SHALL carry out fish passage and water quality operations at Detroit and Big Cliff reservoirs as detailed in the Corps' Interim Measure Nos. 5-7, and modified in the Proposed Revision to Interim Measure 5, ECF 215-1.[2]

---

[2] The Court denies Plaintiffs' request to include additional language specifying that daily discharges will be managed such that at least one half of the discharge passes through the non-turbine outlets. As Plaintiffs note, Interim Measure 5 already specifies that "[a]t least 50% of the total daily flow shall pass thru [sic] the regulating outlet structure (therefore the rest of flow would be through the turbine)." ECF 215-1. Accordingly, the additional language Plaintiffs request is redundant and unnecessary.

3 –   ORDER

      (a)    In 2021, the Corps SHALL use Detroit Dam's lower regulating outlet(s) for temperature control purposes as set forth in the 2021 Detroit and Big Cliff Interim Measure Implementation Plan.[3] To ensure the lower regulating outlet(s) can be used in time to alleviate abnormal fall/winter water temperatures, the Corps must draft Detroit reservoir to elevation 1465' or less by October 15, 2021.

IT IS SO ORDERED.

DATED: September 21, 2021.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

---

[3] Included as Attachment 1 to this Order, ECF 220.

4 –    ORDER